# CLARENCE H. VENNER v. GREAT NORTHERN RAILWAY COMPANY and Others.[1]

May 17, 1912.

Nos. 17,301—(22).

**Corporation — action to compel restoration of property — complaint.**

In an action by a minority stockholder to compel the restoration to the corporation of property acquired by it through investments beyond and in violation of its charter powers, and subsequently unlawfully disposed of without consideration, and for the sale thereof under decree of the court for the benefit of all the stockholders, it is *held* that the complaint states a cause of action for at least a part of the relief demanded, and the demurrer thereto was properly overruled.

**Joinder of causes of action.**

Separate causes of action *held* not improperly united in the complaint.

Action in the district court for Ramsey county against Great Northern Railway Company, Lake Superior Company, Limited, James J. Hill, Louis W. Hill and Robert I. Farrington, and James N. Hill, Louis W. Hill, Walter J. Hill and Edward T. Nichols, as trustees under an agreement of trust dated December 7, 1906, with Lake Superior Company, Limited. The amended complaint prayed for a judgment decreeing that the agreement between the railway company and the Superior Company, dated October 20, 1899, and the trust agreement between the Superior Company and the defendants James N. Hill, Louis W. Hill, Walter J. Hill and Edward T. Nichols, dated December 7, 1906, and all transactions pursuant to said agreements, and each of them, were illegal and void, and that the same be set aside; that any and all securities and property held by the Superior Company or by the trustees were the property of the railway company, and that the Superior Company and the trustees transfer the same to the railway company, or such receiver as the

[1] Reported in 136 N. W. 271.

court might appoint, to fully vest the legal title of the same in the railway company or such receiver; that the Superior Company and the trustees account to the railway company, or to such receiver, for all moneys that at any time had or might come into their hands from the property acquired under such agreement or purchase with funds belonging to the railway company; that the railway company and its president and other defendants who are officers or directors be perpetually enjoined from further buying, owning or holding, either directly or indirectly, through the Superior Company or through the trustees, or through any of the corporations mentioned in the complaint or through other corporations, any of the securities described in the complaint, and from engaging in any line of business complained of in the complaint; that the railway company or any receiver who may be appointed at once dispose of any and all securities and property of the kind referred to in the complaint and distribute the net proceeds among the stockholders of the railway company; and that a receiver be appointed.

From an order, Bunn, J., overruling their separate demurrers to the complaint, defendants took separate appeals. Affirmed.

*E. C. Lindley* and *M. L. Countryman,* for appellants.

*Edward B. Graves* and *Elijah N. Zoline,* for respondent.

BROWN, J.

Action in equity by plaintiff, a stockholder of the Great Northern Railway Company, a corporation, in his own behalf and in behalf of all other stockholders, to compel the restoration of certain property acquired by the corporation as the result of transactions beyond its charter powers, and not used or devoted to the operation of the railway, a part of which is alleged to have been wrongfully and unlawfully transferred to the other defendants, for the sale of the same and the distribution of the proceeds to the stockholders of the corporation. Defendants separately demurred to the complaint, assigning as grounds thereof: (1) The improper joinder of causes of action; and (2) that the complaint fails to state facts constituting a cause of action against any of the defendants. The demurrers were overruled, and defendants separately appealed.

A statement in the abstract of the facts alleged in the complaint will sufficiently disclose the scope and purpose of the action and the questions necessary and proper to be determined at this time. A detailed statement of the facts alleged would serve no useful purpose and result in unnecessarily extending the opinion.

The Great Northern Railway Company is a corporation duly created and existing under the laws of this state, and owns and operates various lines of railway in, through, and beyond the borders of the state. Plaintiff is the owner of three hundred shares of its stock. The complaint alleges that the corporation is the successor in interest of the Minneapolis & St. Cloud Railroad Company, which was organized under chapter 160, p. 294, Territorial Sp. Laws 1856. The defendants claim that the company is the successor also of the Minnesota & Pacific Railroad Company, which was organized under chapter 1, p. 4, Territorial Laws (Extra Sess.) 1857, and that it possesses by that succession all the rights, powers, franchises, and privileges held and possessed by that company. State v. Great Northern Ry. Co. 100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250; State v. Great Northern Ry. Co. 106 Minn. 303, 119 N. W. 202. This question will be referred to further along in the opinion.

The complaint further alleges that prior to October 20, 1899, the defendant railway company had acquired by purchase with money belonging to the company, which should have been used in the operation of the railway, various stocks, bonds, and other securities, of the aggregate value of about $34,000,000. It further alleges that the acquisition of this property was not necessary or appropriate to the management of the railway, and that the purchase thereof was beyond the charter powers of the corporation and unauthorized.

The complaint also alleges that on or about October 20, 1899, defendant James J. Hill, the officers and board of directors of the railway company, and defendants Farrington and James N. Hill, well knowing that the company could not lawfully, under its charter or the laws of the state, purchase, own, or hold the stocks, bonds, and securities mentioned, or become associated in business with the corporations issuing the same, entered into a scheme and plan to enable

117 M.—29.

the company to evade its charter and the laws of the state, and to continue to hold, own, and control such properties, and to enable it to control the business and affairs of the corporations issuing the stocks and bonds so purchased, and to that end caused to be formed a limited copartnership under and pursuant to the laws of the state of Michigan, named the Lake Superior Company, Limited, and that the officers and directors of the railway company thereafter transferred all such stocks, bonds, and securities to that copartnership. The Superior Company is alleged to have been formed by James J. Hill, James N. Hill, and R. J. Farrington, with a capital stock of $100,000. The power of this company, as expressed in its articles of association, and its authority in the transaction of its affairs, was that of buying, selling, working, and dealing in mineral lands in the states of Minnesota, Wisconsin, and Michigan; the mining of iron ore and other minerals, and marketing the same; and also investing in stocks, bonds, and securities of other corporations and concerns. James N. Hill ceased to be a member of the company in 1902, and Louis W. Hill was appointed in his place.

The complaint also alleges that the capital stock of the company, $100,000, was never paid in by the members thereof, and that the sole business of the company was the management and control of the stocks, bonds, and securities transferred to it by the railway company. An examination of the articles of association, in connection with the contract transferring the property, discloses that the Superior Company was a mere holding company, and that the affairs thereof, and the manner and method of handling and dealing with the stocks and bonds so transferred, as well as the investment of the income therefrom, were reserved to the board of directors of the railway company. So that at all times the railway company remained the owner in fact of all the securities so transferred, and the management thereof was in the interest and for the benefit of its stockholders. From this it follows that all of the securities now held by that company, and which were not transferred by it as presently to be mentioned, are still owned by the railway company, though held by and in possession of the Superior Company. The complaint alleges that in the man-

agement of this property, and from the income thereof and from money belonging to the railway company the Superior Company has acquired title to a large amount of other property, some of which consists in iron mines of great value, a particular description of all of which, or the value thereof, plaintiff is unable to state, for the reason that he has been denied access to the books of the railway company where the same appears.

The complaint further alleges that thereafter the directors of the railway company caused to be organized a number of corporations for the purpose of holding, owning, and operating iron mines, manufacturing iron, steel, and other metals, and the general dealing in mineral and other lands; that without consideration, and in furtherance of the scheme of the railway officials to continue in ultra vires transactions, the directors of the railway company caused the Superior Company to convey, separately, to each of such mining companies, certain of the mining lands acquired and held by that company, and further caused the mining companies to issue and deliver to the Superior Company shares of stock in proportion to the value of the property conveyed to each. The complaint also alleges that the transfers to the mining companies were colorable only, and for the purpose of enabling the railway company to continue in the operations of an enterprise and business not authorized by its charter.

The complaint then alleges that on December 7, 1906, defendant James J. Hill and the board of directors of the railway company caused the Superior Company to enter into a certain trust agreement with Louis W. Hill, James N. Hill, Walter J. Hill and Edward J. Nichols, by the terms of which the Superior Company assigned and transferred to the trustees the stock held by it in the several mining companies, of the value, the complaint alleges, of $50,000,000. By the terms of this agreement the stock, and as a result the control of the mining companies and the right to receive the income from the mining and sale of iron ore, passed to the trustees absolutely, to be managed by them in the interest of themselves and the stockholders of the railway company free from any control or supervision by that company.

The complaint alleges that exorbitant salaries are granted to the trustees, and the agreement, which is attached to the complaint, vests in the trustees the exclusive control of the property. Thereafter the trustees issued and delivered to the stockholders of the railway company certificates of stock in the trust, in proportion to the shares each held in the railway company, which are subject to the sale and assignment as stock of other corporations, and separately or in connection with the sale and transfer of the railway stock certificates. These certificates of stock, or beneficial certificates, as they are termed in briefs, are designated Great Northern ore certificates, and are listed upon the stock markets for sale. The trustees may annually, if they deem it proper, declare a dividend and pay the same to the stockholders, but are not required so to do. The complaint also alleges that this transfer to the trustees was not a bona fide transaction, but a further cover or scheme of the railway officials to shield and conceal the ownership of the company in the property so transferred. The trust continues during the lives of certain minor persons therein named, and may not expire for the period of seventy or more years. At the expiration thereof the property reverts to the Superior Company.

The complaint further alleges that, in addition to the property transferred to the Superior Company, the railway company has acquired and owns and holds a large amount of bonds, stocks, and securities in other corporations and concerns, which is in no way necessary or appropriate to the purposes of the railway company, and was acquired by transactions beyond the powers conferred by its charter, the value of which is alleged to be $70,000,000.

This statement presents a fair outline of plaintiff's cause of action, as stated and set forth in the complaint. The relief demanded is that the Superior Company and the trustees be required to restore to the railway company the property held by them, that the same, together with the other property, stocks, bonds, and securities, now possessed by the railway company, which it had no lawful right to acquire, be sold under direction of the court, and the proceeds distributed among the several stockholders.

The only questions presented are: (1) Whether several causes of action are improperly united in the complaint; (2) whether the complaint states facts constituting a cause of action.

1. Taking the complaint as a whole, and viewing the allegations thereof in the light of the evident purpose of the pleader, we are clear that several causes of action are not improperly joined, and that the demurrer upon that ground was properly overruled. The contention of defendants that the claim to a restoration of the property in the hands of the Superior Company constitutes one cause of action, and the claim to a restoration of that transferred to the trustees constitutes another and different right, is not sustained. Nor do the allegations of the ninety-ninth paragraph of the complaint [1] present a cause of action in any essential respect differing from the preceding allegations. The whole scheme of the pleading, and this seems the predominating thought, is to compel by decree of court the sale of property owned by the railway company, which it has acquired in violation of law and its charter powers, and has no authority to hold or control, and that the proceeds thereof be divided among the several stockholders of the company. It does not matter that part of the property so sought to be reached is held by one and a part by another of the defendants, or that a part thereof is now in the possession and control of the company. All the defendants are concerned in the main purposes of the litigation, and it is not material that they are not all affected alike. The principal relief demanded is for a recovery of the property, that it may be disposed of for the benefit of those entitled to it. One general right is demanded, and it is not fatal that defendants are in a measure separately or independently involved. State v. Knife Falls Boom Co. 96 Minn. 194, 104 N. W. 817; Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 Am. St. 451; Williams v. Crabb, 117 Fed. 193, 54 C. C. A. 213, 59 L.R.A. 425.

2. Does the complaint state a cause of action? The question must

---

[1] [That defendant railway company had acquired other securities of various corporations which it had no authority under its charter to own or hold, some of which it had purchased of defendant J. J. Hill at prices in excess of their real value. Reporter.]

be answered in the affirmative. The rule guiding the court in determining the sufficiency of a complaint, either in an action at law or suit in equity, when challenged by a general demurrer, is not to determine whether the plaintiff is entitled to all and singular the relief demanded or prayed for, but whether the allegations thereof, properly and liberally construed, entitle him in any measure to the relief demanded. If so, the demurrer will be overruled. 2 Dunnell, Minn. Digest, § 7549, and cases there cited. The rule is one of sound policy, and serves to obviate the embarrassment with which courts are often confronted by decisions attempting, upon demurrer, to cover the entire scope of the litigation, with only a partial or one-sided statement of facts before them. Every case is controlled by its particular facts, and until they are presented no final determination of the rights and liabilities of the parties can intelligently be made. We follow and apply the rule in this case, and come directly to the question whether the complaint states facts entitling plaintiff to any particular relief.

The theory of plaintiff's case, as heretofore stated, is that all the property here in question, namely, that turned over to the Superior Company, the part thereof which that company transferred to the trustees, as well as the property now in the hands of the railway company and referred to in paragraph 99 of the complaint, was acquired by the railway company as the result of transactions beyond its powers as conferred by its charter, and wholly foreign to the legitimate purposes of the corporation, and that it has no right to retain the same, and therefore that a sale thereof should be ordered by the court for the benefit of the stockholders. It is unnecessary, and we deem it inadvisable, to attempt to determine the extent of the power and authority of the railway company in respect to the investment of its surplus funds in the class of securities and properties here claimed to have been unlawfully acquired, or the question whether plaintiff is or may be entitled to a decree for the sale of the same for the benefit of the stockholders. The complaint may be sustained without regard to either question.

A vast amount of property is involved in the action, a part of which is particularly described, and a part left uncertain; the pre-

cise nature thereof not being disclosed. To attempt to say that the purchase or acquisition of the whole or any part of it was unauthorized would require an anticipation or assumption of the material facts, and result in a correct or an erroneous conclusion, according as the facts may subsequently be made to appear. For this, if for no other reason, the question should be deferred until the evidence comes in. We pass, therefore, without further mention, the contention of defendants that the right to invest in all classes or species of property was vested in the old Minnesota & Pacific Railroad Company, by the terms of its charter, and that the right so conferred passed to the Great Northern Company as its successor in interest. The fact remains, according to the allegations of the complaint, that all the property here involved was acquired with the money of the railway company, and if any part thereof has been wrongfully and unlawfully disposed of by the company a restoration thereof to its treasury may be compelled, irrespective of the question whether it was originally rightfully or wrongfully acquired. And we are not required to go further in this respect than to hold that a restoration may be had, leaving the question whether a sale of the same may be ordered to the trial court after the facts have been presented.

That a portion of the property has been wrongfully disposed of by the railway company there can be, on the facts alleged in the complaint, no serious question. Upon this feature of the case we concur with the learned trial court that the formation of the trust and the transfer of the iron ore properties to the trustees was illegal, and a violation of the rights of the nonassenting stockholders. That transfer was at the instance and pursuant to directions of the railway company, acting through its board of directors, and, though valid as to all stockholders who expressly or impliedly acquiesced therein, was not of binding force against those who did not assent. While the transfer was made by the Superior Company, the complaint makes it clear that it was the act of the railway company, for the Superior Company had no interest in the property, and held it subject to the orders of the railway company. Since the property was originally acquired with the money of the railway company, it was held by the company for the uses and purposes of the corporation and its stock-

holders. The transfer to the trustees was without consideration, and all title and right of control thereby passed from the railway company, resulting in a loss to and a violation of the rights of the stockholders. The trustees were vested with the exclusive management of the property, and, though beneficial certificates were issued to the railway stockholders, no dividends were to be declared or to be paid thereon, except when the trustees deemed it proper. It requires no extended discussion to demonstrate the unlawfulness of the transaction as respects the stockholders who refused their assent to the transaction. Stockholders have the undoubted right to insist that the property of the corporation be devoted to corporate purposes, and to prevent, by appropriate proceedings, a dissipation thereof by gift or a disposition to purposes foreign to the affairs of the corporation.

Counsel for defendants do not seriously, if at all, controvert this proposition, but they do contend: (1) That all stockholders of the railway company must be deemed to have acquiesced in the transfer to the Superior Company, because not questiond for more than eight years thereafter, and that in any event plaintiff cannot question the same, since he became a stockholder long after the transaction had been fully consummated and completed; and (2) that since the trustees issued and delivered to the railway stockholders beneficial certificates in the trust, which were transferable on the market independently of the corporation stock, which they have accepted, they cannot now complain.

It is a sufficient answer to the first contention that no title or exclusive right of control ever passed to the Superior Company, and whatever of the property now remains in its hands belongs to and is under the control of the railway company. If, therefore, it shall appear on the trial of the action that plaintiff is entitled to a sale of the property for the benefit of the stockholders of the railway company, the fact of the colorable transfer to the Superior Company presents no obstacle in the way of a decree so directing. The property belongs to the railway company, and is simply held by this agency, created for the purpose. In this view of the case it becomes unnecessary to determine whether plaintiff, having acquired his stock subsequent to the transfer to the Superior Company, may attack the

same. The question is not involved, for there never was a sale or parting with the title to that company. It may be said, however, that upon the suggested question the authorities are not in harmony. 2 Clark & Marshall, Private Corporations, 551. As to the transfer to the trustees the question is not involved, for plaintiff became a stockholder prior to that transaction.

In respect to the second contention, just referred to, namely, the issuance, delivery, and acceptance of the beneficial certificates, it is sufficient to say that the complaint does not present facts justifying the conclusion urged. It affirmatively alleges plaintiff's refusal to accept the certificates.

Our conclusion, therefore, upon this branch of the case is that the act of the railway company in vesting title to the iron properties in the trustees was illegal, and plaintiff is at least entitled to a decree for its restoration. Williams v. Johnson, 208 Mass. 544, 95 N. E. 90; Schwab v. Potter, 194 N. Y. 409, 87 N. E. 670. Whether he is entitled to any other or further relief we do not attempt to determine.

3. It is further contended by defendants that plaintiff cannot maintain the action, for the reason that no sufficient demand was made upon the railway company that the action be brought by its officers. This question requires no extended mention. The rights of minority stockholders are clearly defined by law; and where the corporation itself refuses to act, that a minority stockholder may maintain an action in behalf of himself and all other stockholders to protect their rights is equally well settled. The property sought to have restored to the railway company has been wrongfully diverted by the corporation, and we are clear that an action to compel such restoration may be maintained by a stockholder, when the corporation refuses to act. The complaint sufficiently alleged a refusal of the railway company, and defendants' objections to the complaint in this respect are not sustained.

Order affirmed.

BUNN, J., having made the order appealed from, took no part.