## IN THE MATTER OF THE ESTATE OF SAMUEL THORNE, DECEASED.

## EDWIN THORNE AND OTHERS, EXECUTORS v. STATE.[1]

### April 30, 1920.

### No. 21,827.

**Inheritance tax — rule of practical construction not controlling.**

1. The rule of practical construction is *held* to not control the court in this case, the statute being that when a decedent is a nonresident the property within the jurisdiction of the state transferred by his will or by intestate law is subject to a tax, and the difficulty of its application being dependent chiefly on the facts of a given case.

**Trust certificates, having a market value, subject to inheritance tax.**

2. Shares of beneficial certificates in a trust, entitling the holder to dividends from the shares of mining corporations, domestic and foreign, constituting the corpus of the trust and to ultimately share in the trust property, and which certificates have a market value, are subject to a succession tax when their nonresident owner dies, if the trust has a domicile or situs within the jurisdiction of this state.

**Domicile of trust in Minnesota.**

3. The trust here in question has such situs within this state, from the fact that its principal place of administration is within this state where the corpus of the trust is kept and managed, and where its president, secretary and office force are located, notwithstanding, for convenience, some of its business is transacted in another state, where two of the four trustees reside.

Upon the application of an executor of the estate of Samuel Thorne, to the attorney general, for a determination of the amount of the inheritance tax claimed to be due on account of the transfer of the shares

[1]Reported in 177 N. W. 638.

of Great Northern Iron Ore Properties Trustees' Certificates of Beneficial Interest, owned by the decedent, it was determined that at the time of the death of decedent, certain persons named in decedent's last will would receive out of said property legacies exceeding in value the amount of the statutory exemption in the several amounts specified. From this finding, the executors appealed to the district court for Ramsey county. The appeal was heard by Olin B. Lewis, J., who made findings that to the extent of 72.37 per cent of the value their beneficial certificates were taxable under the Minnesota inheritance tax law and to the extent of 27.63 per cent they were not taxable and in accordance therewith ordered the determination of the attorney general to be amended. From that part of the judgment affirming the determination of the attorney general insofar as it found that 72.37 per cent of the value of the certificates of beneficial interest constituted property of decedent within the state of Minnesota subject to an inheritance tax and that the amount of inheritance tax which the state should recover from the Samuel Thorne estate upon a transfer of the certificates was 72.37 per cent of the tax found by the attorney general, the executors appealed. From that part of the judgment which determined that the determination of the attorney general be set aside, insofar as it determined that 27.63 per cent of the value of the certificates of beneficial interest constituted property of decedent within the state so as to render a transfer subject to such tax, the state appealed. Reversed with directions.

*Shearman & Sterling* and *Davis, Severance & Morgan,* for the executors.

*Clifford L. Hilton,* Attorney General, and *Egbert S. Oakley,* Assistant Attorney General, for the state.

HOLT, J.

The court below determined that certain share certificates held by Samuel Thorne, at his death, were subject to an inheritance or succession tax to the extent of 72.37 per cent of their taxable value. The executors of his estate appeal from the judgment, contending that no part or proportion of the shares is subject to the tax, while the state

also appeals, claiming that no deduction from the full taxable value should have been made.

The findings of fact were made upon the stipulations and admissions of the parties. The substance of those deemed material to the appeal may be thus stated:

Samuel Thorne, a resident of New York City, died there July 4, 1915, testate. The will was probated in New York and the appellants, all residents of that state, were duly appointed executors. At the time of death, Thorne owned 13,606 shares of "Great Northern Iron Ore Properties Trustees' Certificate of Beneficial Interest," hereinafter called beneficial certificates for short. They had been in his possession in New York since their issuance to him and were worth, on the stock market, $35.62 a share, at the time of his death. Their origin, in brief, was this:

The Great Northern Railway Company, a Minnesota corporation, had acquired many thousand acres of iron bearing ore in this state, together with other property not a part of its transportation business. Some eight subsidiary Minnesota corporations had been organized to operate mines and handling facilities upon and in connection with these mineral lands, and to deal in mines, mining leases and transact other business. There were also two foreign companies or corporations, formed to hold and operate similar properties and business in this state. All of the property held by the mining companies, apparently, belonged to the Great Northern Railway Company. The latter, realizing that mining and other industrial and commercial business, not directly connected with that of a common carrier, should be placed in other hands than its own, contrived the trust in which these beneficial certificates were issued. James J. Hill, the president of the railway company and its moving spirit, his son James N. Hill, and Robert I. Farrington had formed a partnership under the laws of Michigan to deal in mineral lands in Michigan, Wisconsin and Minnesota, and to take and hold bonds and stocks of all sorts. The name assumed was the Lake Superior Company, Limited. It was evidently designed to be a holding company. It held all the shares of stock of the various mining companies above referred to for the benefit of the shareholders of the railway company,

when in 1906, by resolution of the board of directors of the railway company, this trust agreement was authorized, and, pursuant thereto, the Lake Superior Company transferred to Louis W. Hill, James N. Hill, Walter J. Hill and Edward T. Nichols all of said shares in said mining companies in trust during the life of certain children named and for 20 years after the death of the last survivor. The trustees were to issue, and did issue, to each stockholder of the railway company as many shares of these beneficial certificates as he held of Great Northern railway shares. The trustees were to use and exercise their powers as the sole shareholders of the several mining companies and preserve their existence; collect the dividends on the shares, or income to accrue in virtue thereof; pay taxes and expenses of the trust without recourse to the beneficial certificate holders; after paying these expenses they, from time to time and at least once in every year, were to distribute and pay such portion of the net income or proceeds of the property as they might deem proper to the beneficial certificate holders; they were given full power to sell or exchange the shares of stock transferred to them by the Lake Superior Company, and the interest of each and every beneficiary under the trust continues to be limited to the right to receive his proportional share of dividends in such distribution as shall from time to time have been determined by the trustees. The trustees, as such, in no way participate in the management of the mining companies, but all the said trustees, as individuals, together with other persons elected by them by exercise of their stock vote, are the officers and directors of all the mining companies, except that James N. Hill, residing in New York, has not been an officer of any mining company and Nichols, the other trustee also residing in New York, has never been an officer in the Leonard Mining Company. A more complete outline of the trust may be had from the opinion in Venner v. Great Northern Ry. Co. 117 Minn. 447, 136 N. W. 271.

The trust agreement was executed and delivered in New York, but the shares of stock thereby transferred were delivered to the trustees at St. Paul, Minnesota, where they have ever since been kept. The president of the trustees had always lived in the city of St. Paul, as did also one other trustee, during the life of Mr. Thorne. Two of the trustees have resided in New York, where also is maintained an office for the

transfer and registering of the beneficial certificate shares, and distributing the dividends thereon. The funds of the trust are kept both in Minnesota and New York depositaries. The meetings of the trustees have been few in number, and have generally been held in the city of New York. The trustees first adopted by-laws or rules in January, 1913; these provide for monthly meetings at the office of the president in St. Paul. The secretary of the trustees and his office force and records have always been in St. Paul; this secretary and office force have also handled the business of the mining companies. All dividends and other income from the mining companies are paid to the trustees at St. Paul, but the dividend checks to the registered beneficial certificate holders are issued and mailed from the New York office. When Mr. Thorne died the trustees had $1,113,968.69 of trust funds on deposit in New York banks and $2,688,869.31 in Minnesota banks, but there were no funds in the hands of the trustees that they had determined to distribute as dividends. Over ten million dollars have been distributed to the beneficial certificate holders since the formation of the trust. The attorney general has heretofore ruled that the beneficial certificates of this trust were not subject to a succession tax.

The first contention of the executors is that the state is foreclosed from claiming this tax by reason of the attorney general's practical construction given the taxing statute. Numerous cases are cited as to the binding force given by courts to the construction consistently given for a considerable period of time to a statute by officials connected with its enforcement or required to discharge executive or administrative duties thereunder. State v. Moffett, 64 Minn. 292, 67 N. W. 68; State v. Northern Pac. Ry. Co. 95 Minn. 43, 103 N. W. 731; Musgrove v. Baltimore & Ohio R. Co. 111 Md. 629, 75 Atl. 245; Tyler v. Treasurer, 226 Mass. 306, 115 N. E. 300, L.R.A. 1917D, 633; In re Week's Estate, 169 Wis. 316, 172 N. W. 732. We, however, note that the question here is not strictly one of construing the inheritance tax statute, but rather an ascertainment of facts to determine whether or not the beneficial certificates in this trust represent property rights within the jurisdiction of this state so that a succession tax may be exacted. The deliberate omission of the taxing authorities, up to the present time, to

assert the right to impose such a tax on securities of this sort, though entitled to weight, ought not to be conclusive on the courts. To what extent former officials have known the facts going to fix the situs of this property is not disclosed. The statute that "when a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death," the tax shall be imposed (section 2271, G. S. 1913), is so plain that it is not open to construction.

The able counsel for the executors have exhaustively considered the legal status of the holders of the beneficial certificates to the trust property and to the trustees under the instrument creating the trust. The origin of trusts was no doubt for the protection of the beneficiary so as to assure to him the income from the corpus of the trust and closing every avenue by which he, or others, might acquire, dispose of, impair or encumber the property itself. And the courts when dealing with trusts have, of course, adopted and applied principles of law which, as between the beneficiary, his creditors and his trustees, conserve the trust estate and attain the purposes of the trust. But it may be doubted whether the legal principles formulated and applied by courts in such matters should guide as rigidly when it comes to a contest by the state to impose a succession tax upon the decedent's beneficiary interest in a trust. However that may be we think the determinative question here is the situs of the trust, rather than the legal nature of the interest the holder of the beneficial certificates has or may assert to the trust property. It may not be doubted that the shares held by Mr. Thorne represent property. They have participated in princely earnings, and entitle the holder ultimately to share in the vast properties represented by the shares of the mining companies constituting the corpus of the trust. No matter how contingent or uncertain, from a legal viewpoint, the interest represented by these beneficial certificates of Mr. Thorne might be, they possessed a very substantial value on the stock market. A trust dealing with vast fortunes must have a home where its business is administered.

The outstanding facts which seem to us to fix the domicile of this trust in this state are these: The shares of the mining companies, the corpus of the trust, have always remained here since the transfer to the trustees; the president and secretary of the trustees have always re-

sided here; this secretary and his office force have not only had here charge of the trust estate, its records and business, but such persons have also constituted the secretary and office force of the mining companies; the income from the trust property, that is, from the shares in the mining companies, has always been accounted for and turned over to the trustees in this state, and the trust was planned and authorized by the Great Northern Railway Company, a domestic corporation, and represents property mostly situate in this state and which belonged to the railway company when the trust agreement was made. The Great Northern Railway Company was the real settlor of the trust. We hold that the trust to which these beneficial certificates pertain is within the jurisdiction of the state and has a situs and location therein.

The only other state that could possibly claim to be the seat of this trust would be New York, and the only facts pointing to that conclusion would be the execution of the trust agreement there, the maintenance in New York City of transfer, registering and dividend disbursing offices, the keeping of funds on deposit in New York banks, the residence there of two trustees, and meetings of the trustees held in that state. But it is readily appreciated that the maintenance of the offices mentioned in New York City is to facilitate dealings on the stock market in these certificates and other financial transactions, the same as like offices are there maintained in the same building by the Great Northern Railway Company. And no doubt convenience dictated the meetings in New York City by the trustees, and the execution there of the trust agreement, the trustees here residing, actively engaged as officers of the railway company and the mining companies, would naturally find frequent visits to New York, the financial center, necessary, while business journeys to the west by the New York trustees would likely be rare. We entertain no doubt that, at any time while an owner, Mr. Thorne could have come into the courts of this state for any relief he might have shown himself entitled to in respect to his interest in this trust. The case of Venner v. Great Northern Ry. Co. supra, was disposed of on the facts admitted by the demurrer to the complaint, and is not to be construed as holding, as a matter of law that the certificate holders cannot compel by appropriate suit a distribution of accumulated earnings. Had there been but one trustee, either a person domiciled in this state

or a domestic corporation such as a trust company, with the corpus of the trust held and managed as here was done, no question could well have been raised as to the right to impose the tax, even though the trust agreement were executed in New York, and even though a transfer and dividend paying office were there kept, and even if it were doubtful by the law of which state the validity of the trust agreement should be determined.

The proposition that a trust has a situs so as to afford a basis for claiming an inheritance tax is not entirely novel, although courts in determining the location may not always stress the same factors. Varied importance is given to the residence of the trustees, the residence of the settlor, the place of the administration of the trust, and the location of the trust property. Professor J. H. Beale, in an article in the Harvard Law Review for April, 1919 [Vol. 32, page —], arrives at the conclusion that a succession tax is payable at the place of the administration or seat of the trust. The cases cited by him may not be directly in point, but have some bearing. In re Cigala's Settlement Trusts, 7 Ch. Div. 351; In re Douglas Co. v. Kountze, 84 Neb. 506, 121 N. W. 593. See also Peabody v. Treasurer, 215 Mass. 129, 102 N. E. 435.

Having reached the conclusion that the trust to which these beneficial certificates attach has a location or situs within this state so as to give jurisdiction to exact a succession tax when the holder of the trust certificates dies, it follows that no reduction should be made because some of the shares constituting the corpus of the trust are shares of stock in foreign corporations. The trustees of a trust, having a domicile within the state where the principal part of the administration of the trust is conducted and the corpus of the trust is kept and controlled, should be regarded for succession tax purposes as if constituting a domestic concern or corporation.

On the state's appeal the judgment is reversed and the case is remanded with direction to amend the conclusion of law in the findings and enter judgment in accordance with this opinion.