## IN RE ESTATE OF EMMA B. KENNEDY.
## STEPHEN BAKER AND ANOTHER, APPELLANTS.[1]

May 20, 1932.

No. 28,763.

*Rushmore, Bisbee & Stern* and *Kellogg, Morgan, Chase, Carter & Headley,* for appellants.

*Henry N. Benson,* Attorney General, and *John F. Bonner,* Assistant Attorney General, for the state.

[1]Reported in 242 N. W. 697.

DIBELL, J.

Appeal from the judgment of the district court of Ramsey county imposing a death transfer tax upon the estate of Emma B. Kennedy, deceased, who was domiciled in New York at the time of her death.

There were two sources of inheritance tax claimed by the state. One was stock of the Great Northern Railway Company; and the other was certificates of beneficial interest in the Great Northern Iron Ore Properties Trust. The decedent owned 21,147 shares of preferred stock of the Great Northern Railway Company, a Minnesota corporation. Its value was found to be $1,744,627.50. She owned 14,030 shares of beneficial interest in the Great Northern Iron Ore Properties Trust found to be of the value of $301,645; a total value of both of $2,046,272.50. A death transfer tax of $243,409.23 was imposed by the judgment upon the transfer of the stock and certificates.

The statute relative to the imposition of taxes upon death, so far as here important, is as follows:

"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, except county, town or municipal corporation within the state, for strictly county, town or municipal purposes, in the following cases:

"(1) When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

"(2) When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death.

"(3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.

"(4) Such tax shall be imposed when any such person or corporation become beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act." G. S. 1923 (1 Mason, 1927) § 2292.

■ The decedent was a resident of New York at the time of her death on July 23, 1930. The stock was deposited in the First National Bank of New York, and a certificate of deposit was issued to her. Her estate was probated in New York and is in course of administration. No administration either original or ancillary was had in Minnesota. There was imposed upon the stock by New York a transfer tax, and it was paid.

The Great Northern is a Minnesota corporation created in 1856 by a special act of the legislature. It does business in Minnesota, in many other states of the Union, and in the Dominion of Canada. In 1929 and 1930 it received from its business in Minnesota 34 or 35 per cent of its aggregate railway operating revenues. The valuation of its property on December 31, 1930, was $555,209,015, and that within the state of Minnesota was $137,346,179. Its operating revenues for the same year were $125,932,807.71, of which $43,334,603.55 were apportioned to Minnesota. It pays a property tax in Minnesota by way of a gross earnings lieu tax. Offices for the transfer of its stock are located in New York.

Subsequent to the judgment of the trial court imposing the inheritance tax the case of First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 211, reversing 130 Me. 123, 154 A. 103, was decided. That case, in connection with Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000, reversing In re Estate of Taylor, 175 Minn. 310, 219 N. W. 153, 221 N. W. 64; Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. ed. 1056, 72 A. L. R. 1303; and Beidler v. South Carolina Tax Comm. 282 U. S. 1, 51 S. Ct. 54, 75 L. ed. 131, definitely determined that a succession tax cannot be levied on Great Northern stock held as this was. In First Nat. Bank v. Maine, 284 U. S. 312, 321, 52 S. Ct. 174, 175, 76 L. ed. 211, the court said:

"Beginning with Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. ed. 439, decisions of this court rendered before Farmers Loan Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000, it may be conceded, would preclude a successful challenge to the judgment of the state court. In the first named case it was held that a deposit in a New York trust company to the credit of Blackstone, who died domiciled in Illinois, was subject to a transfer tax imposed by New York, notwithstanding the fact that the whole succession, including the deposit, had been similarly taxed in Illinois. That decision was overruled by the Farmers Loan Company case, and with it, of course, all intermediate decisions so far as they were based on Blackstone v. Miller."

In the course of its discussion the court said [284 U. S. 326]:

"The rule of immunity from taxation by more than one state, deducible from the decisions in respect of these various and distinct kinds of property, is broader than the applications thus far made of it. In its application to death taxes, the rule rests for its justification upon the fundamental conception that the transmission from the dead to the living of a particular thing, whether corporeal or incorporeal, is an event which cannot take place in two or more states at one and the same time."

And again [284 U. S. 327]:

"A transfer from the dead to the living of any specific property is an event single in character and is effected under the laws, and occurs within the limits, of a particular state; and it is unreasonable, and incompatible with a sound construction of the due process of law clause of the Fourteenth Amendment, to hold that jurisdiction to tax that event may be distributed among a number of states."

And again [284 U. S. 328]:

"We conclude that shares of stock, like the other intangibles, constitutionally can be subjected to a death transfer tax by one state only.

"The question remains: In which state, among two or more claiming the power to impose the tax, does the taxable event occur? In the case of tangible personalty, the solution is simple: The transfer, that is, the taxable event, occurs in that state where the property has an actual situs, and it is taxable there and not elsewhere. In the case of intangibles, the problem is not so readily solved, since intangibles ordinarily have no actual situs. But it must be solved unless gross discrimination between the two classes of property is to be sanctioned; and this court has solved it in respect of the intangibles heretofore dealt with by applying the maxim *mobilia sequuntur personam.*"

The case of Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000, reversing In re Estate of Taylor, 175 Minn. 310, 314, 219 N. W. 153, 221 N. W. 64, involving the taxation of bonds and certificates of indebtedness of the state and local municipalities, where held by one domiciled in another state, and holding them nontaxable, is enough to determine the place of taxability of the Great Northern shares. The court said [280 U. S. 209, 211, 212]:

"Blackstone v. Miller, supra, and certain approving opinions, lend support to the doctrine that ordinarily choses in action are subject to taxation both at the debtor's domicile and at the domicile of the creditor; that two States may tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment. The inevitable tendency of that view is to disturb good relations among the States and produce the kind of discontent expected to subside after establishment of the Union. The Federalist, No. VII. The practical effect of it has been bad; perhaps two-thirds of the States have endeavored to avoid the evil by resort to reciprocal exemption laws. It has been stoutly assailed on principle. Having reconsidered the supporting arguments in the light of our more recent opinions, we are compelled to declare it untenable. Blackstone v. Miller no longer can be regarded as a correct exposition of existing law; and to prevent misunderstanding it is definitely overruled.

"Four different views concerning the situs for taxation of negotiable public obligations have been advanced. One fixes this at the domicile of the owner; another at the debtor's domicile; a third at the place where the instruments are found—physically present; and the fourth within the jurisdiction where the owner has caused them to become integral parts of a localized business. If each State can adopt any one of these and tax accordingly, obviously, the same bonds may be declared present for taxation in two, or three, or four places at the same moment. Such a startling possibility suggests a wrong premise. * * *

"While debts have no actual territorial situs we have ruled that a State may properly apply the rule *mobilia sequuntur personam* and treat them as localized at the creditor's domicile for taxation purposes. Tangibles with permanent situs therein, and their testamentary transfer, may be taxed only by the State where they are found. And, we think, the general reasons declared sufficient to inhibit taxation of them by two States apply under present circumstances with no less force to intangibles with taxable situs imposed by due application of the legal fiction. * * *

"We have determined that in general intangibles may be properly taxed at the domicile of their owner and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. The difference between the two things, although obvious enough, seems insufficient to justify the harsh and oppressive discrimination against intangibles contended for on behalf of Minnesota."

In commenting upon the Farmers L. & T. Co. case in the state of Maine case the court said [284 U. S. 324]:

"The view that two states have power to tax the same transfer on different and inconsistent principles was distinctly rejected; and the general reasons which support the rule that tangibles and their testamentary transfer may be taxed only by the state where they are found were held to be sufficient to inhibit the taxation by two states of intangibles with a taxable situs imposed by due application of the *mobilia* maxim."

And the court further said [284 U. S. 329] :

"And since death duties rest upon the power of the state imposing them to control the privilege of succession, the reasons which sanction the selection of the domiciliary state in the various cases first named, sanction the same selection in the case last named. In each case, there is wanting, on the part of a state other than that of the domicile, any real taxable relationship to the event which is the subject of the tax. Ownership of shares by the stockholder and ownership of the capital by the corporation are not identical. The former is an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts."

It is noted that the trial court in imposing the transfer tax on the Great Northern stock followed State ex rel. Bodman v. Probate Court, 142 Minn. 415, 172 N. W. 318, and In re Estate of Lund, 183 Minn. 368, 236 N. W. 626, which were decided prior to the decision of the Supreme Court in the Maine case, both of which justified the trial court's decision. The federal cases cited control. Our holding in the two cases followed by the trial court was wrong. There is no foundation for levying in Minnesota a death transfer tax on the Great Northern stock owned by the decedent.

■ The decedent owned 14,030 shares of beneficial interest in the Great Northern Iron Ore Properties Trust. They were kept in New York in the same manner as the Great Northern stock. They were taxed under the death transfer tax law of New York, and the transfer tax was paid. They were not a part of any business carried on by the decedent in Minnesota.

The Great Northern Iron Ore Properties Trust certificates were issued under a trust agreement dated December 7, 1906. The trust agreement was executed and delivered in New York. The trust owns stock in various mining companies. It does not manage them. It has no control over them, though in general the trustees are officers and directors of them. It receives the dividends or earnings which the companies pay. It issues certificates in accordance with the provisions of the trust representing shares of beneficial interest

under the trust and delivers them to the beneficiaries in interest. All issues and transfers of certificates are made in New York, where the books are kept. A New York corporation is the corporate registrar. The trust maintains an office in St. Paul, where records are kept with a secretary in charge. Checks of the mining companies are delivered to the trust in St. Paul. It keeps a deposit account in St. Paul and New York. The secretary is the secretary of the mining companies. All distributions of income are made by checks drawn at the New York office on funds in New York. The property of the trust comprises all of the stock in nine Minnesota corporations and 90 per cent of the stock in a West Virginia corporation. Of the total value 87 per cent is represented by the Minnesota corporations and 13 per cent by the West Virginia corporation. The corporations own mineral lands or leases on the Missabe range in Minnesota, which are subject to an ad valorem tax and to such other exactions as the Minnesota statutes make. At the time of decedent's death there were no funds in the hands of the trustees which the trustees had determined to distribute or on which they had declared a distribution to the certificate holders. The nature of the creation and operation of the trust is detailed in Thorne v. State, 145 Minn. 412, 177 N. W. 638, where a succession tax imposed by the state against the estate of a nonresident was sustained. Other references to it are found in Venner v. G. N. Ry. Co. 117 Minn. 447, 136 N. W. 271, and State v. G. N. Ry. Co. 160 Minn. 515, 200 N. W. 834. The details of the organization and the method of management need not be considered at length. The certificate holders do not have title to the property of the trust; and, besides, the property of the trust is intangible, that is, capital stock of corporations. We repeat when we say that the rights of the certificate holders are not more than choses in action; they are in a way analogous to corporate shares but are not; they evidence no ownership in real estate in Minnesota; they carry no ownership in corporate shares in Minnesota corporations; the trust owns the shares; they have no location in Minnesota as tangibles; they are not intangibles devoted by their owner to a local use in Minnesota;

they carry a right to participate beneficially in the proceeds of the corporate shares which the trust owns; and the right of a certificate holder is of such character that the law gives it protection. The cases cited in the Thorne case as to the situs of a trust for taxation do not apply; nor is Bates v. Decree of Judge of Probate, 131 Me. 176, 160 A. 22, for reasons before stated, in point. In that case the subject of the trust was realty of another state. Here it is not realty of any state but shares of a corporation in states other than of the certificate holder.

The right of the certificate holder is, as the trust agreement provides, "the right to receive his proportional share of dividends in such distribution as shall from time to time have been determined on and declared by said trustees." The right is valuable, doubtless within the law's protection, but not property in things owned by the trust, nor in any sense a tangible. The certificate holders no more own the property of the trust or the stocks included than do stockholders own the property of a corporation; and if they did they would own intangibles. In holding the certificates subject to a death transfer tax in the Thorne case the thought was that they bore a close analogy to corporate shares—so close that they had a situs in Minnesota sufficient to sustain the imposition of a death transfer tax, just as corporate shares would have—for then the doctrine of Blackstone v. Miller, 188 U. S. 189, was law and situs was important; and the doctrine that tangibles are taxable where they are and intangibles at the domicile of their owner had not reached its present definite development.

Under the decision in the Maine case and other cases leading to it, the ore certificates are no more subject to a death transfer tax than the corporate shares; indeed, the argument of the Thorne case sought to put them in as good a position for taxation; and the argument was quite good when Blackstone v. Miller, 188 U. S. 189, controlled. When Blackstone v. Miller was no longer the law, Thorne v. State, 145 Minn. 412, 177 N. W. 638, was not nor were the other cases holding intangibles taxable outside the state of the domicile of the owner. There is no foundation for the tax sought

to be imposed. It is noted that in imposing a transfer tax on the ore certificates the trial court followed the Thorne case, which supported its holding.

■ It is recognized that intangibles acquire a situs for taxation other than at the domicile of their owner by analogy to tangibles if they have become integral parts of a local business. New Orleans v. Stempel, 175 U. S. 309, 20 S. Ct. 110, 44 L. ed. 174; Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. ed. 701; Liverpool & L. & G. Ins. Co. v. Bd. of Assessors, 221 U. S. 346, 31 S. Ct. 550, 55 L. ed. 762, L. R. A. 1915C, 903; Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000. The Bristol case was from Minnesota. The owner of money gave it a business situs in Minnesota by having it there in charge of an agent for permanent investment and reinvestment. See In re Estate of Jefferson, 35 Minn. 215, 28 N. W. 256.

The Maine case recognizes the possibility of such a result in these words [284 U. S. 331]:

"We do not overlook the possibility that shares of stock, as well as other intangibles, may be so used in a state other than that of the owner's domicile as to give them a situs analogous to the actual situs of tangible personal property. * * * That question heretofore has been reserved, and it still is reserved to be disposed of when, if ever, it properly shall be presented for our consideration."

There is no sound suggestion that the stock or ore certificates taxed in Minnesota were so used as to give a situs analogous to the actual situs of tangible personal property and therefore nothing to justify the imposition of a death transfer tax in Minnesota as upon tangibles.

After a long growth, with a natural fluctuation of view, the law has come to be, as we understand it, that the transfer by death is an event which occurs in a single state—in one taxing jurisdiction only; that the death transfer tax is imposed upon tangibles in the jurisdiction where they are; that it is imposed upon intangibles at the domicile of the owner, save as by the use to which they have been devoted by their owner they have become by analogy

tangibles for purposes of imposing a death transfer tax; and that property passing by will or descent no longer is subject to a death transfer tax in two or more states. It may be supposed that in practice questions giving trouble will arise as to the actual location of tangibles, as to the real domicile of the owner of intangibles, and as to whether intangibles have been devoted to a use in another state than that of the owner so as to be subject to a transfer tax there; but their solution will present no greater difficulties than courts daily meet.

Judgment reversed.