# IN RE ESTATE OF HENRY A. MONFORT.[1]

March 8, 1935.

No. 30,097.

*Harry H. Peterson,* Attorney General, and *Harry W. Oehler,* Deputy Attorney General, for the state.

*Todd & Fosnes* and *William C. Green,* for respondent.

Stone, Justice.

Appeal by the state from an order determining that the Brooklyn Trust Company, coexecutor (hereinafter referred to as executor) of the last will and testament of Henry A. Monfort, deceased, was legally entitled to a refund of $604.32, the amount of an inheritance transfer tax paid by it.

The application for refund was made by the executor to the state auditor August 25, 1933. It recited that Henry A. Monfort died testate on October 11, 1930; that at the time of his death he was domiciled in the state of New York; that on August 1, 1931, the

[1]Reported in 259 N. W. 554.

attorney general of the state determined that an inheritance tax was payable by the estate pursuant to 1 Mason Minn. St. 1927, § 2302, upon the transfer of 220 shares of preferred capital stock of the Great Northern Railway Company (a Minnesota corporation); that the inheritance tax was accordingly imposed and paid; that the payment was made to secure the consent of the state of Minnesota to the transfer of the shares of stock; that the tax was erroneously paid and that the assessment and imposition thereof by the state were unlawful and in violation of the fourteenth amendment to the constitution of the United States, in that the tax was imposed upon a transfer by death of shares of stock in a Minnesota corporation, forming part of the estate of a decedent who at the time of his death was domiciled in the state of New York; that at the time of the payment of the tax it had been determined by the supreme court of the state of Minnesota in In re Estate of Lund, 183 Minn. 368, 236 N. W. 626, that such a tax did not violate said fourteenth amendment; that later, January 4, 1932, the Supreme Court of the United States determined in First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401, that the exaction of such a tax was not within the power of a state under the fourteenth amendment; that the application for refundment was being made pursuant to 1 Mason Minn. St. 1927, § 2301, and L. 1933, c. 335, hereinafter quoted. The petitioner then prayed for the refundment of the $604.32, with interest.

L. 1933, c. 335, provides in part:

"Where the attorney general has, prior to the enactment of this chapter, made and determined that an inheritance tax is payable pursuant to Mason's Minnesota Statutes of 1927, Section 2302, and a tax heretofore has been paid pursuant to such determination, and an application for the refunding of such tax is made, pursuant to Mason's Minnesota Statutes of 1927, Section 2301, within three years from the date of such tax, whether such application is made before or after the passage of this act, any person aggrieved by the failure of the auditor of state to draw his warrant for the refundment of the amount of tax so paid may, within one year from the passage of this act, appeal to the district court of Hennepin County

or Ramsey County, Minnesota, by filing with the attorney general a notice in writing setting forth the payment of such tax under a determination of the attorney general, and that a claim for refundment of the tax has been made to the auditor of state, and that the auditor has refused to, or has failed to, draw his warrant therefor, and that he appeals from the refusal or failure of the auditor to draw his warrant, * * *."

1 Mason Minn. St. 1927, § 2301, provides:

"When any tax imposed by this act shall have been erroneously paid, wholly or in part, the person paying the same shall be entitled to a refundment of the amount so erroneously paid, and the auditor of state shall, upon satisfactory proofs presented to him of the facts relating thereto, draw his warrant upon the state treasurer for the amount thereof, in favor of the person entitled thereto; provided, however, that all applications for such refunding of erroneous taxes shall be made within three years from the payment thereof."

The auditor refused to draw his warrant upon the state treasurer, and an appeal was taken under L. 1933, c. 335, to the district court of Ramsey county. The decision was adverse to the state.

The issues were tried upon agreed facts. Precisely, the stipulation was that the case "may be heard and determined upon" the facts stated. Such a stipulation carries a very plain implication that it includes all relevant facts. It was stipulated that Mr. Monfort died a resident of New York, owning the stock in question. Nothing more appearing, that was determinative. There were no pleadings in the formal sense. So the stipulation, in addition to the facts, stated the claims on each side. Those statements stand in lieu of pleadings. But, except for their admissions and as they frame the issues, pleadings are not the basis of decision. The facts adduced by the evidence, or as in this case by stipulation, control decision. There are in some cases, but not here, presumptions to aid or qualify facts proved or stipulated. On the record so made, there could have been no other decision than that the applicant was entitled to the refund.

The state suggests that the refundment authorized by § 2301 and L. 1933, c. 335, amounts to an appropriation of public money for a private purpose, contrary to art. 9, § 10, of the state constitution, which provides, *inter alia*, that "the credit of the state shall' never be given or loaned in aid of any individual, association or corporation." There is no unconstitutional appropriation to any individual or for any private purpose when the legislature recognizes a just demand, as for money had and received, against the state and appropriates money wherewith to discharge the debt and direct its payment out of the money so appropriated. There is nothing in the constitution forbidding the state to recognize and pay its just debts.

The original payment was made under protest. Whether it was voluntarily or involuntarily made we need not determine because that is immaterial under the language of L. 1933, c. 335. That statute does not condition the right to refundment which it creates and implements upon the fact either of payment under protest or compulsion. Hence, whether protest was made, or the payment so far under compulsion as to be involuntary in the accepted sense, is immaterial.

If, as an administrative matter, before approving transfers of stocks of nonresident decedents, upon which there is no inheritance tax, the attorney general requires some proof that at the time of the decedent's death they did not have a *situs*, local to Minnesota, probably nobody can object. And if, upon issues duly made and tried upon evidence, it is insisted that the burden of proof of that negative is upon the applicant for a refund, another question may be presented. But it is one not in this case because here all the facts were stipulated.

Order affirmed.

HILTON, JUSTICE (dissenting).

I concur in the result reached in the companion Rand case, 193 Minn. 599, 259 N. W. 556, for therein it was stipulated and found by the court that all the stock involved was in the state of decedent's residence except certain shares which were deposited for safekeeping purposes in a vault in Minneapolis and were not pledged or

otherwise made use of in Minnesota. None of the stock had a taxable *situs* in Minnesota.

I respectfully submit that the applicant in the instant (Monfort) case should have shown that the shares of stock had not been used in Minnesota in such a manner as to become an integral part of a local business, so as to subject them to an inheritance tax under the rule stated in First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401; In re Estate of Kennedy, 186 Minn. 160, 242 N. W. 697.

As stated in the opinion, certain facts were stipulated. Those facts, as far as here important, were that Monfort died a resident of the state of New York, and that shares of stock of a Minnesota corporation were a part of his estate. It was not stipulated, nor did it appear, where those shares of stock were kept, whether in New York or in Minnesota. If in New York, they were of course not taxable; if in Minnesota they would be subject to taxation if used in a manner as first above indicated. The attorney general in his objections, return, and answer among other things claimed an entire lack of proof that the stock had not been so used in Minnesota as to acquire a taxable *situs;* an entire absence of any evidence as to where the shares of stock were kept or as to how used. The lack of such proof was asserted and made an issue at the trial. The stipulation, after reciting the facts as stated above, set forth the claims of the applicant and those of the state. As much attention should be given to one set of claims as to the other. The applicant claimed that the tax was erroneously paid; the state that it did not appear that it was erroneously paid for the reason that the applicant had failed to prove that the shares of stock did not have a taxable *situs* here. The court without making a finding or a conclusion as to the *situs,* as was done in the Rand case, concluded that the tax was erroneously paid, thus adopting without any proof the claim of the applicant (not a stipulated fact). The majority opinion rejects the claim of the state because not within the stipulated facts, but gives credence to and adopts a claim of applicant not within the stipulated facts.

The attorney general brought this as a test case, there being numerous others of a like nature pending involving an amount in the neighborhood of $60,000. In fairness and justice to the state I think the case should be remanded to the trial court for the purpose of giving the applicant an opportunity to show, if he can, that none of the property had been so used in Minnesota as to acquire a *situs* for inheritance taxation purposes.