# FIRST NATIONAL BANK OF BOSTON, EXECUTOR, *v.* MAINE.

No. 171.   Argued December 10, 1931.—Decided January 4, 1932.

*Mr. Leonard A. Pierce,* with whom *Messrs. Charles L. Hutchinson, Herbert J. Connell,* and *Marion H. Fisher* were on the brief, for appellant.

*Mr. Clement F. Robinson,* Attorney General of Maine, with whom *Mr. Nathan W. Thompson* was on the brief, for appellee.

318

By *Mr. Seth T. Cole* on behalf of the Tax Commission of the State of New York; by *Messrs. Henry N. Benson,* Attorney General, and *John F. Bonner* and *William K. Montague,* Assistant Attorneys General, on behalf of the State of Minnesota; by *Messrs. John M. Perry, Samuel W. Fordyce, Thomas W. White, Henry J. Richardson,* and *C. P. Fordyce* on behalf of the executors of the will of James N. Jarvie; and by *Mr. Russell L. Bradford* on behalf of the City Bank Farmers Trust Co.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The question presented for our determination by this appeal is whether the State of Maine has power, under the Fourteenth Amendment, to impose a tax upon a transfer by death of shares of stock in a Maine corporation, forming part of the estate of a decedent, who, at the time of his death, was domiciled in the Commonwealth of Massachusetts.

The facts which give rise to the question follow. In 1924, Edward H. Haskell died testate, a resident of Massachusetts. The greater part of his property consisted of shares of stock in the Great Northern Paper Company, a Maine corporation, having most of its property in that state. His will was probated in Massachusetts, where the stock, as a part of his estate, had been made liable to an inheritance tax of like character to the inheritance tax in force in Maine. The Massachusetts tax amounted to over $32,000 and was paid on legacies and distributive shares made up in greater part of the proceeds of the paper company stock. Ancillary administration was taken out in a Maine probate court, and an inheritance tax, amounting to over $62,000, was

assessed under the Maine statutes [1] on the property pass-
ing by the will. Upon this amount the tax paid' to
Massachusetts was allowed as a credit, and an action of
debt was brought to recover the balance. Upon an
agreed statement embodying the foregoing facts, the
case was referred for final decision to the Supreme Judi-
cial Court of the State of Maine, sitting as a law court.
That court rendered judgment for the state, holding that
the shares of stock were " within its jurisdiction and there
subject to an inheritance tax even though the owner
was a nonresident decedent, regardless of whether the '
certificates of stock were at the time of the death in the
state of the domicile or in the taxing state;" and that
the Fourteenth Amendment thereby was not infringed.
130 Me. 123; 154 Atl. 103.

Beginning with *Blackstone* v. *Miller*, 188 U. S. 189,
decisions of this court rendered before *Farmers Loan Co.*
v. *Minnesota*, 280 U. S. 204, it may be conceded, would
preclude a successful challenge to the judgment of the
state court. In the first named case it was held that a
deposit in a New York trust company to the credit of
Blackstone, who died domiciled in Illinois, was subject

---

[1] Sec. 1, c. 69, R. S. Maine, 1916, provides:
"All property within the jurisdiction of this state, and any interest
therein, whether belonging to inhabitants of this state or not, and
whether tangible or intangible, which shall pass by will, by the in-
testate laws of this state, . . . shall be subject to an inheritance tax
for the use of the state as hereinafter provided. . . ."

Sec. 25 of the same chapter in substance provides that in case of
transfers of stock owned by a nonresident decedent in a Maine cor-
poration, the tax shall be paid to the Attorney General at the time
of the transfer.

Sec. 37, c. 51, R. S. Maine, 1916, provides:
" No transfer shall affect the right of the corporation to pay any
dividend due upon the stock, or to treat the holder of record as the
holder in fact, until such transfer is recorded upon the books of the
corporation or a new certificate is issued to the person to whom it has
been so transferred."

to a transfer tax imposed by New York, notwithstanding the fact that the whole succession, including the deposit, had been similarly taxed in Illinois. That decision was overruled by the *Farmers Loan Company* case, and with it, of course, all intermediate decisions so far as they were based on *Blackstone* v. *Miller*.

A review of these decisions would serve no useful purpose. While in some of them a restatement of the doctrine of *Blackstone* v. *Miller* was unnecessary to a determination of the points presented for consideration, and in others the facts might be distinguished from those of the present case; nevertheless, the authority of the *Blackstone* case was accepted by all. *Frick* v. *Pennsylvania*, 268 U. S. 473, was one of the latest to approve that case and give countenance to the general doctrine that intangible property (unlike tangible property) might be subjected to a death transfer tax in more than one state; but this and all other instances of such approval, whether express or tacit, with the overthrow of the foundation upon which they rested, have ceased to have other than historic interest.

It was by the *Frick* case, however, that the rule became definitely fixed that, as to tangible personal property, the power to tax is exclusively in the state where the property has an actual *situs*; and this, as will be seen later, has an important bearing on the present case. Mr. Frick, domiciled in Pennsylvania, died testate owning tangible personal property having an actual *situs* in New York and Massachusetts. His will was probated in Pennsylvania, and a transfer tax was imposed under a Pennsylvania statute which provided for such a tax on all property of a resident decedent, whether within or without the state. Ancillary letters were granted in New York and Massachusetts. We decided, pp. 488–492, that the Pennsylvania tax, in so far as it was imposed upon the transfer of tangible personalty having an actual *situs* in other states, was in contravention of the due process clause of the Fourteenth Amendment. Upon a review of former decisions, it was held (1) that the exaction of a tax beyond

the power of the state to impose was a taking of property in violation of the due process clause; (2) that while the tax laws of a state may reach every object which is under its jurisdiction, they cannot be given extraterritorial operation; and (3) that as respects tangible personal property having an actual *situs* in a particular state, the power to subject it to state taxation rests exclusively in that state, regardless of the owner's domicile.

The tax there under consideration was not a property tax, but one laid on the transfer of property on the death of the owner, and as to that the court said (p. 492):

" But to impose either tax the State must have jurisdiction over the thing that is taxed, and to impose either without such jurisdiction is mere extortion and in contravention of due process of law."

See also *Union Transit Co.* v. *Kentucky,* 199 U. S. 194, 204; *Rhode Island Trust Co.* v. *Doughton,* 270 U. S. 69, 80.

The decision of this court in the *Farmers Loan Company* case was foreshadowed by its decision in *Safe Deposit & T. Co.* v. *Virginia,* 280 U. S. 83. There it was held that intangibles, such as stocks and bonds, in the hands of the legal holder of the title in the state of his residence, may not be taxed at the domicile of the equitable owner in another state; and in respect of taxation of the same securities by two states we said (p. 94):

" It would be unfortunate, perhaps amazing, if a legal fiction originally invented to prevent personalty from escaping just taxation, should compel us to accept the irrational view that the same securities were within two States at the same instant and because of this to uphold a double and oppressive assessment."

A little later at the same term, the *Farmers Loan Company* case was decided. 280 U. S. 204. The facts are recited at page 208. Henry R. Taylor, domiciled in New York, died testate leaving negotiable bonds and certificates of indebtedness issued by the State of Minnesota and two of her municipalities. Some of them were regis-

tered; none were connected with business carried on by or for the decedent in Minnesota. His will was probated and his estate administered in New York, and a tax exacted by that state on the testamentary transfer. Minnesota assessed an inheritance tax upon the same transfer, which was upheld by her supreme court. This court, applying the maxim *mobilia sequuntur personam*, held that the *situs* for taxation was in New York, and that the tax was there properly imposed. The contention on behalf of the state was that the obligations were debts of Minnesota and her municipal corporations, subject to her control; that her laws gave them validity, protected them and provided means for enforcing payment; and that, accordingly, they had a *situs* for taxation also in that state.

This court agreed that *Blackstone* v. *Miller* and certain approving opinions lent support to the view that ordinarily choses in action might be subjected to taxation both at the domicile of the debtor and that of the creditor, and that two states might tax on different and more or less inconsistent principles the same testamentary transfer of such property without conflict with the Fourteenth Amendment. But it was said that the tendency of that view was to disturb good relations among the states; that the practical effect of it had been bad; and that a preponderance of the states had endeavored to avoid the evil by resort to reciprocal exemption laws. Upon these and other considerations, which we shall not stop to particularize, the case was overruled as no longer constituting a correct exposition of existing law. The view that two states have power to tax the same transfer on different and inconsistent principles was distinctly rejected; and the general reasons which support the rule that tangibles and their testamentary transfer may be taxed only by the state where they are found were held to be sufficient to inhibit the taxation by two states of intangibles with a

taxable *situs* imposed by due application of the *mobilia* maxim.

After saying that choses in action, no less than tangible personalty, demand protection against multiple taxation, the court, at p. 212, concluded:

" Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences. We have determined that in general intangibles may be properly taxed at the domicile of their owner and we can find no sufficient reason for saying that they are not entitled to enjoy an immunity against taxation at more than one place similar to that accorded to tangibles. The difference between the two things, although obvious enough, seems insufficient to justify the harsh and oppressive discrimination against intangibles contended for on behalf of Minnesota."

Notwithstanding the registration of certain of the bonds, and notwithstanding the contention that Minnesota protects the debt, compels its payment, and permits its transfer, we concluded that the testamentary transfer was properly taxable in New York, but not also in Minnesota.

This case was followed by *Baldwin* v. *Missouri*, 281 U. S. 586. There the testator, domiciled in Illinois at the time of her death, had credits for cash deposited in banks located in Missouri, and certain bonds of the United States and promissory notes—all physically within that state. Some of the notes, executed by residents of Missouri, were secured on lands in that state. Applying the principles of the *Farmers Loan Company* case, we held that the *situs* of these credits, bonds and notes was at the domicile of the testator, and there passed from the dead to the living; that they were not within Missouri for taxation purposes; and that the transfer was not subject to the power of that state.

*Beidler* v. *South Carolina Tax Comm.*, 282 U. S. 1, presented still another phase of the subject. There it appeared that a resident of Illinois died in that state. At the time of his death, a South Carolina corporation was indebted to him in a large sum upon an open, unsecured account entered upon the books of the corporation kept in South Carolina. Again applying the principles of the *Farmers Loan Company* case, we held that the transfer by death of this debt was taxable only by the state of the domicile.

It long has been settled law that real property cannot be taxed, or made the basis of an inheritance tax, except by the state in which it is located. More recently it became settled that the same rule applies with respect to tangible personal property And it now is established by the three cases last cited that certain specific kinds of intangibles, namely, bonds, notes and credits, are subject to the imposition of an inheritance tax only by the domiciliary state; and this notwithstanding the bonds are registered in another state, and the notes secured upon lands located in another state, resort to whose laws may be necessary to secure payment.

The rule of immunity from taxation by more than one state, deducible from the decisions in respect of these various and distinct kinds of property, is broader than the applications thus far made of it. In its application to death taxes, the rule rests for its justification upon the fundamental conception that the transmission from the dead to the living of a particular thing, whether corporeal or incorporeal, is an event which cannot take place in two or more states at one and the same time. In respect of tangible property, the opposite view must be rejected as connoting a physical impossibility; in the case of intangible property, it must be rejected as involving an inherent and logical self-contradiction. Due regard for the processes of correct thinking compels the

conclusion that a determination fixing the local *situs* of a thing for the purpose of transferring it in one state, carries with it an implicit denial that there is a local *situs* in another state for the purpose of transferring the same thing there. The contrary conclusion as to intangible property has led to nothing but confusion and injustice by bringing about the anomalous and grossly unfair result that one kind of personal property cannot, for the purpose of imposing a transfer tax, be within the jurisdiction of more than one state at the same time, while another kind, quite as much within the protecting reach of the Fourteenth Amendment, may be, at the same moment, within the taxable jurisdiction of as many as four states, and by each subjected to a tax upon its transfer by death, an event which takes place, and in the nature of things can take place, in one of the states only.

A transfer from the dead to the living of any specific property is an event single in character and is effected under the laws, and occurs within the limits, of a particular state; and it is unreasonable, and incompatible with a sound construction of the due process of law clause of the Fourteenth Amendment, to hold that jurisdiction to tax that event may be distributed among a number of states.

It is true, there are such differences between bonds and stocks as might justify their being placed in separate categories for some purposes. But, plainly, they may not be so placed for the purpose of subjecting a transfer by death of the former to a tax by one state only, and a similar transfer of the latter to a tax by two or more states. Both are intangibles and both generally have been recognized as resting in contract, or, technically, as " choses in action." *Hawley* v. *Malden*, 232 U. S. 1, 12; *Blodgett* v. *Silberman*, 277 U. S. 1, 14. The reciprocal inheritance statutes now in force in a preponderating number of the

states of the Union make no distinction between the various classes of intangible personal property. The New York statute, for example, under that term includes "deposits in banks, mortgages, debts, receivables, *shares of stock,* bonds, notes, credits, evidences of an interest in property, evidences of debt and choses in action generally." Genl. L. N. Y., 1930, c. 710, § 1. This impressive recognition of the substantial identity of the enumerated intangibles, for purposes of death taxation, is entitled to weight.

A distinction between bonds and stocks for the essentially practical purposes of taxation is more fanciful than real. Certainly, for such purposes, the differences are not greater than the differences between tangible and intangible property, or between bonds and credits. When things so dissimilar as bonds and household furniture may not be subjected to contrary rules in respect of the number of states which may tax them, there is a manifest incongruity in declaring that bonds and stocks, possessing, for the most part, the same or like characteristics, may be subjected to contrary rules in that regard.

We conclude that shares of stock, like the other intangibles, constitutionally can be subjected to a death transfer tax by one state only.

The question remains: In which state, among two or more claiming the power to impose the tax, does the taxable event occur? In the case of tangible personalty, the solution is simple: the transfer, that is, the taxable event, occurs in that state where the property has an actual *situs,* and it is taxable there and not elsewhere. In the case of intangibles, the problem is not so readily solved, since intangibles ordinarily have no actual *situs.* But it must be solved unless gross discrimination between the two classes of property is to be sanctioned; and this court has solved it in respect of the intangibles heretofore dealt with by applying the maxim *mobilia sequuntur personam.*

*Farmers Loan Co.* v. *Minnesota, supra,* at pp. 211–212; *Baldwin* v. *Missouri, supra; Beidler* v. *South Carolina Tax Comm., supra.*

This ancient maxim had its origin when personal property consisted, in the main, of articles appertaining to the person of the owner, such as gold, silver, jewels and apparel, and, less immediately, animals and products of the farm and shop. Such property was usually under the direct supervision of the owner and was often carried about by him on his journeys. Under these circumstances, the maxim furnished the natural and reasonable rule. In modern times, due to the vast increase in the extent and variety of tangible personal property not immediately connected with the person of the owner, the rule has gradually yielded to the law of the place where the property is kept and used. *Pullman's Car Co.* v. *Pennsylvania,* 141 U. S. 18, 22; *Eidman* v. *Martinez,* 184 U. S. 578, 581; *Union Transit Co.* v. *Kentucky, supra,* 206. But in respect of intangible property, the rule is still convenient and useful, if not always necessary; and it has been adhered to as peculiarly applicable to that class of property. *Blodgett* v. *Silberman, supra,* 9–10; *Farmers Loan Co.* v. *Minnesota, supra,* 211; *Union Transit Co.* v. *Kentucky, supra,* 206.

The considerations which justify the application of the fiction embodied in the maxim to death transfer taxes imposed in respect of bonds, certificates of indebtedness, notes, credits and bank deposits, apply, with substantially the same force, in respect of corporate shares of stock. And since death duties rest upon the power of the state imposing them to control the privilege of succession, the reasons which sanction the selection of the domiciliary state in the various cases first named, sanction the same selection in the case last named. In each case, there is wanting, on the part of a state other than that of the domicile, any real taxable relationship to the event which is the subject of the tax. Ownership of shares by

the stockholder and ownership of the capital by the corporation are not identical. The former is an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts. *The Delaware Railroad Tax,* 18 Wall. 206, 229–230; *Rhode Island Trust Co.* v. *Doughton,* 270 U. S. 69, 81; *Eisner* v. *Macomber,* 252 U. S. 189, 213–214. And this interest is an incorporeal property right which attaches to the person of the owner in the state of his domicile. The fact that the property of the corporation is situated in another state affords no ground for the imposition, by that state, of a death tax upon the transfer of the stock. *Rhode Island Trust Co.* v. *Doughton, supra.* And we are unable to find in the further fact of incorporation under the laws of such state, adequate reason for a different conclusion.

Undoubtedly, the state of incorporation may tax the transfer of the stock of a nonresident decedent, and the issue of a new certificate to take the place of the old, under the power generally to impose taxes of that character. But, plainly, such a tax is not a death duty which flows from the power to control the succession; it is a stock transfer tax which flows from the power of the state to control and condition the operations of the corporation which it creates. A formal transfer of the stock upon the books of the corporation, and the issue of new certificates, bear a relation to the succession differing little, if at all, in substantial effect from that borne by the registration of the state bonds, involved in the *Farmers Loan Company* case, or the necessity of invoking the law of Missouri in respect of notes secured on Missouri lands, involved in the *Baldwin* case. Practical considerations of wisdom, convenience and justice alike dictate the desirability of a uniform general rule confining the jurisdiction to impose death transfer taxes as to in-

tangibles to the state of the domicile; and these considerations are greatly fortified by the fact that a large majority of the states have adopted that rule by their reciprocal inheritance tax statutes. In some states, indeed, the rule has been declared independently of such reciprocal statutes. The requirements of due process of law accord with this view.

We do not overlook the possibility that shares of stock, as well as other intangibles, may be so used in a state other than that of the owner's domicile as to give them a *situs* analogous to the actual *situs* of tangible personal property. See *Farmers Loan Company* case, *supra,* at p. 213. That question heretofore has been reserved, and it still is reserved to be disposed of when, if ever, it properly shall be presented for our consideration.

We hold that the exaction of the tax here assailed was not within the power of the state under the Fourteenth Amendment; and, accordingly, the judgment below must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

Mr. Justice Stone, dissenting.

Recognizing that responsibility must rest primarily on those who undertake to blaze a new path in the law, to say how far it shall go, and notwithstanding the decisions of this Court in *Safe Deposit & Trust Co.* v. *Virginia,* 280 U. S. 83; *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *Baldwin* v. *Missouri,* 281 U. S. 586; *Beidler* v. *South Carolina Tax Comm.,* 282 U. S. 1, I am not persuaded that either logic, expediency, or generalizations about the undesirability of double taxation justify our adding, to the cases recently overruled, the long list of those which, without a dissenting voice, have supported taxation like the present. No decision of this Court requires that result. See *Baldwin* v. *Missouri, supra,* p. 596.

Such want of logic as there may be in taxing the transfer of stock of a nonresident at the home of the corporation results from ascribing a *situs* to the shareholder's intangible interests which, because of their very want of physical characteristics, can have no *situs*, and again in saying that the rights, powers, and privileges incident to stock ownership and transfer which are actually enjoyed in two taxing jurisdictions, have *situs* in one and not in the other. *Situs* of an intangible, for taxing purposes, as the decisions of this Court, including the present one, abundantly demonstrate, is not a dominating reality, but a convenient fiction which may be judicially employed or discarded, according to the result desired.

The decedent, if we disregard the fiction and its attendant maxims, acquired rights and privileges with respect to a corporation created by Maine and under its control. The nature and extent of his interest are defined by the laws of Maine, and his power to secure the complete transfer of it is dependent upon them. These characteristics of corporate shares, distinguishing them in several respects from unsecured obligations to pay money, have long been explicitly recognized by this Court as the source of state power to tax nonresident stockholders and as sufficient ground for its exercise. See *Frick* v. *Pennsylvania*, 268 U. S. 473, 497; *Baker* v. *Baker, Eccles & Co.*, 242 U. S. 394, 401; *Hawley* v. *Malden*, 232 U. S. 1, 12; *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, 81. See also *Corry* v. *Baltimore*, 196 U. S. 466. Compare *Citizens National Bank* v. *Durr*, 257 U. S. 99; *Cream of Wheat Co.* v. *Grand Forks*, 253 U. S. 325. This Court has recently said, in *Frick* v. *Pennsylvania*, supra [p. 497]:

" The decedent owned many stocks in corporations of States, other than Pennsylvania, which subjected their transfer on death to a tax and prescribed means of enforcement which practically gave those States the status

of lienors in possession. As those States had created the corporations issuing the stocks, they had power to impose the tax and to enforce it by such means, irrespective of the decedent's domicile and the actual situs of the stock certificates. Pennsylvania's jurisdiction over the stocks necessarily was subordinate to that power. Therefore to bring them into the administration in that State it was essential that the tax be paid. . . . We think it plain that such value as the stocks had in excess of the tax is all that could be regarded as within the range of Pennsylvania's taxing power."

The withdrawal from appellee of authority to impose the present tax, in terms which would sweep away all power to impose any form of tax with respect to the shares of a domestic corporation if owned by nonresidents, would seem to be a far greater departure from sound and accepted principles, and one having far more serious consequences, than would the disregard of wholly artificial notions of the *situs* of intangibles.

The present tax is not double in the sense that it is added to that imposed by Massachusetts, since the Maine statute directs that the latter be deducted from the former. But, as the stockholder could secure complete protection and effect a complete transfer of his interest only by invoking the laws of both states, I am aware of no principle of constitutional interpretation which would enable us to say that taxation by both states, reaching the same economic interest with respect to which he has sought and secured the benefits of the laws of both, is so arbitrary or oppressive as to merit condemnation as a denial of due process of law. Only by recourse to a form of words—saying that there is no taxable subject within the state, by reason of the fictitious attribution to the intangible interest of the stockholder of a location elsewhere,—is it possible to stigmatize the tax as arbitrary.

Affirmance of this judgment involves no declaration that the tax may be imposed by three or more states instead of two, and, under the decisions of this Court, there is no ground for supposing that it could be. See *Rhode Island Trust Co.* v. *Doughton,* 270 U. S. 69. Even if it be assumed that some protection from multiple taxation, which the Constitution has failed to provide, is desirable, and that this Court is free to supply it, that result would seem more likely to be attained, without injustice to the states, by familiar types of reciprocal state legislation, than by stretching the due process clause to cover this case. See 28 Columbia L. Rev. 806; 43 Harvard L. Rev. 641. We can have no assurance that resort to the Fourteenth Amendment, as the ill-adapted instrument of such a reform, will not create more difficulties and injustices than it will remove. See 30 Columbia L. Rev. 405–406.

The present denial to Maine of power to tax transfers of shares of a nonresident stockholder in its own corporation, in the face of the now accepted doctrine that a transfer of his chattels located there and equally under its control, *Frick* v. *Pennsylvania, supra,* and that his rights as *cestui que trust* in a trust of property within the state, *Safe Deposit & Trust Co.* v. *Virginia, supra,* may be taxed there and not elsewhere, makes no such harmonious addition to a logical pattern of state taxing power as would warrant overturning an established system of taxation. The capital objection to it is that the due process clause is made the basis for withholding from a state the power to tax interests subject to its control and benefited by its laws; such control and benefit are together the ultimate and indubitable justification of all taxation.

I think the judgment should be affirmed.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in this opinion.