Ellis CAMPBELL, Jr. and Chester Usry, District Directors, Internal Revenue Service, Appellants,

v.

Lema Parker BAGLEY, Appellee.

No. 17854.

United States Court of Appeals
Fifth Circuit.

March 15, 1960.

Meyer Rothwacks, Atty., Rita E. Hauser, Fred E. Youngman, Dept. of Justice, Washington, D. C., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., Lee A. Jackson, A. F. Prescott, Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., for appellants.

Malcolm E. Lafargue, Shreveport, La., for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

JONES, Circuit Judge.

In this case the appellants, one the District Director of the Internal Revenue Service of Texas and the other the District Director of the Internal Revenue Service of Louisiana, are claiming a lien, and a priority of lien, and the right to enforce a lien on personal property, incident to the collection of tax revenue owing to the United States. The appellee, Lema Parker Bagley, is a widow whose husband died in 1953. There are three Bagley children. C. H. Bagley is the oldest. At all times here material he lived at Waskom, in Harrison County, Texas, just west of the Texas-Louisiana boundary. The next of the children is John E., who lived in Shreveport, Louisiana, as did his mother. Shreveport is in Caddo Parish, which lies east of and adjoining Harrison County, Texas. The third son, Gary Bagley, was not a participant in the activities out of which this litigation arose. The appellee's husband had been in the oil well drilling business. At the time of his father's death, C. H. Bagley was living in Texas and was in the oil well servicing business. John Bagley took over the operation of the

father's business. Mrs. Bagley was without business experience and John Bagley undertook the management of her business affairs. Neither John Bagley nor his mother had anything to do with the business of C. H. Bagley.

At various times in 1954 and 1955 Mrs. Bagley made loans to C. H. Bagley. These loans aggregated $19,500. C. H. Bagley then owned four drilling or well servicing rigs, all of which were mortgaged. In October of 1957, C. H. Bagley sold all of the well servicing rigs and equipment except that involved in this case and with a portion of the proceeds paid off the mortgage indebtedness on the rig and equipment here involved. On December 19, 1957, C. H. Bagley executed a chattel mortgage in the amount of $20,000 to his mother. This mortgage was given at the request of John Bagley who gave a mortgage to his mother about the same time as security for loans made by her to him. The mortgage of C. H. Bagley to his mother covered the remaining drilling rig and equipment owned by him. The rig and equipment was then located partly in Winn Parish, Louisiana, and partly in Union Parish, Louisiana. The mortgage was recorded in Caddo Parish on January 2, 1958, and in Winn Parish on April 17, 1958. C. H. Bagley's insurance was cancelled. He found himself out of business. By arrangement with John Bagley who acted for the mother, C. H. Bagley gave a bill of sale, on April 22, 1958, to his mother of the mortgaged rig and equipment, all of which was then in Winn Parish, Louisiana. "The sale of the rig and equipment" was, as stated in the district court's findings, "C. H. Bagley's method of repaying her what he had borrowed from her." C. H. Bagley has not attempted to use or exercise any control over the rig and equipment since the execution of the instrument of transfer. The bill of sale was recorded on April 22, 1958, in Winn Parish, where all of the property described in the mortgage and the bill of sale was then physically present. The rig and equipment was then used for about a week by John Bagley.

C. H. Bagley was indebted to the United States for taxes, mostly withholding taxes. He had made an arrangement to work out his tax delinquency by installment payments. He failed to perform his agreement and the Internal Revenue Service filed a notice of lien in Harrison County, Texas, on January 24, 1958, for withholding taxes owing by C. H. Bagley in an amount of somewhat in excess of forty-five hundred dollars. Another federal tax lien notice for the same items, and for some federal unemployment taxes amounting to about a hundred and fifty dollars, was filed in Winn Parish, Louisiana, on May 19, 1958. On May 6, 1958, a notice of levy was served on John Bagley and he paid $250 rental to the Government agent. On June 27, 1958, the appellants, acting under a warrant of distraint, seized and took custody of the rig and equipment which was then in Winn Parish, Louisiana, for the delinquent taxes of C. H. Bagley. Such are the facts upon which our controversy is predicated. For the most part the facts are uncontroverted. To the extent of disagreement the findings of the district court, in all instances, are supported by substantial evidence. Mrs. Bagley brought suit against the District Directors to enjoin the sale of the rig and equipment and seeking to have the warrant of distraint quashed. The defendants moved to dismiss. They first asserted that the suit is one to restrain the collection of taxes and as such is prohibited by 26 U.S.C.A. (I.R.C.1954) § 7421(a). They next contended that as they neither resided in nor had been served within the jurisdiction of the court, there was no power to grant the relief sought. The motion was denied. The defendants answered, admitting, denying or averring lack of knowledge of the allegations of the complaint. As a second defense in their answer the appellants again set up the fact of their residence outside of the judicial district of the court and the absence of service upon them in the district, and again said that the court had no jurisdiction to enter an injunction against them. Trial was had, judgment was given for

Mrs. Bagley enjoining the District Directors from selling the property, and cancelling the tax liens as to the drilling rig and equipment. The District Directors appeal.

The first matter we consider is the effect of the filing of the notice of lien in Harrison County, Texas, as to the tangible personal property which was then physically located in Winn Parish, Louisiana. The statute gives the Government a lien [1] and provides,

"(a) *Invalidity of lien without notice.*—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate.—

"(1) *Under state or territorial laws.*—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; * * * *" 26 U.S.C.A. (I.R.C.1954) § 6323(a)(1).

The Government's position is that the situs of tangible personal property is that of the domicile of the owner. Commenting upon such doctrine, the Supreme Court has said:

"No general principles of law are better settled or more fundamental, than that the legislative power of every state extends to all property within its borders, and that only so far as the comity of that state allows can such property be affected by the law of any other state. The old rule, expressed in the maxim *mobilia sequuntur personam,* by which personal property was regarded as subject to the law of the owner's domicile, grew up in the Middle Ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs,* the law of the place where the property is kept and used. Green v. Van Buskirk, 5 Wall. 307 [18 L.Ed. 599], and 7 Wall. 139 [19 L.Ed. 109]; Hervey v. Rhode Island Locomotive Works, 93 U.S. 664 [23 L.Ed. 1003]; Harkness v. Russell, 118 U.S. 663, 679 [7 S.Ct. 51, 30 L.Ed. 285]; Walworth v. Harris, 129 U.S. 355 [9 S.Ct. 340, 32 L.Ed. 712]; Story on Conflict of Laws, § 550; Wharton on Conflict of Laws, §§ 297–311. As observed by Mr. Justice Story, in his commentaries just cited, 'although movables are for many purposes to be deemed to have no situs, except that of the domicile of the owner, yet, this being but a legal fiction, it yields, whenever it is necessary for the purpose of justice that the actual situs of the thing should be examined. A nation within whose territory any personal property is actually situate has an entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there.'" Pullman's Palace Car Co. v. Com. of Pennsylvania, 141 U.S. 18, 22, 11 S.Ct. 876, 877, 35 L.Ed. 613.

Again, discussing the situs of tangible personal property, the Supreme Court said:

"We submit that it is the law that, while the transfer of intangible personalty can be taxed at the domicile of the owner, either inter vivos or upon death, that is true only because of the fiction *mobilia sequuntur personam.* Originally this theory applied to tangibles as well as to intangibles, but it has long since passed away as to anything except

---

1. 26 U.S.C.A. (I.R.C.1954) § 6321.

intangibles. This, because fiction, must yield to fact. These tangible articles, pictures, furniture, household stores, cows, horses, agricultural implements, have a real, physical existence and necessarily have a situs as surely as buildings and lands have. Their situs is in New York and Massachusetts, not in Pennsylvania. Therefore, this tax cannot be sustained upon authority of the maxim *mobilia sequuntur personam*, either under the decisions of this Court or under the decisions of the Supreme Court of Pennsylvania." Frick v. Pennsylvania, 268 U.S. 473, 477, 45 S.Ct. 603, 69 L.Ed. 1058. See City Bank Farmers Trust Co. v. Schnader, 293 U. S. 112, 55 S.Ct. 29, 79 L.Ed. 228.

Another decision reflects and defines the departure from *mobilia sequuntur personam*, the Court stating:

"This ancient maxim had its origin when personal property consisted in the main of articles appertaining to the person of the owner, such as gold, silver, jewels and apparel, and, less immediately, animals and products of the farm and shop. Such property was usually under the direct supervision of the owner and was often carried about by him on his journeys. Under these circumstances, the maxim furnished the natural and reasonable rule. In modern times, due to the vast increase in the extent and variety of tangible personal property not immediately connected with the person of the owner, the rule has gradually yielded to the law of the place where the property is kept and used. Pullman's [Palace] Car Co. v. Pennsylvania, 141 U.S. 18, 22 [11 S.Ct. 876, 35 L.Ed. 613]; Eidman v. Martinez, 184 U.S. 578, 581 [22 S. Ct. 515, 46 L.Ed. 697]; Union Transit Co. v. Kentucky, supra, [199 U.S. 194] 206 [26 S.Ct. 36, 50 L.Ed. 150]. But in respect of intangible property, the rule is still convenient and useful, if not always necessary; and it has been adhered to as peculiarly applicable to that class of property." First National Bank v. Maine, 284 U.S. 312, 329, 52 S.Ct. 174, 177, 76 L. Ed. 313. Cf. Vogel v. New York Life Ins. Co., 5 Cir., 1932, 55 F.2d 205, certiorari denied 287 U.S. 604, 53 S.Ct. 9, 77 L.Ed. 525.

■■ The law of the actual physical situs governs the capacity to convey and the validity of conveyances of tangible personal property. It fixes the nature of interests conveyed in tangibles. Restatement Conflict of Laws, § 255–258. Cf. 70 Harv.L.Rev. 582–584. The District Directors quote to us statements of this Court in a prior decision where it was said:

"The [federal] statute, however, does not require a tax lien to be filed in every county to which personal property may be carried in order to be enforceable against a subsequent mortgagee or pledgee. The requirement that notice of lien be filed in the office in which the filing of such notice is authorized by the law of the state in which the property subject to the lien is situated is satisfied, so far as is pertinent here, when such notice is filed in the county of the taxpayer's domicile. See Investment & Securities Co. v. United States, 9 Cir., 140 F.2d 894. It is the transitory nature of personal property which requires the application of this rule. To hold otherwise, would be to overlook the practical necessities of the situation and would require the Collector to file tax liens in every jurisdiction to which the taxpayers may at any time remove the property. We do not think this result was intended by the statute, nor do the laws of Texas relating to the recording of liens against personal property require a different result." Grand Prairie State Bank v. United States, 5 Cir., 1953, 206 F.2d 217, 219. See 13 Tax L.Rev. 459, 462.

This case involved diamonds. From "gold and jewels, which could be easily carried * * * from place to place, or secreted in spots known only to himself,"[2] stemmed "the maxim *mobilia sequuntur personam*, by which personal property was regarded as subject to the law of the owner's domicile."[3] Diamonds are of that kind of personal property "immediately connected with the person of the owner" which still may have a legal situs at the domicile of the owner.[4] The case of Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F.2d 894, which is cited in the Grand Prairie opinion, and Marteney v. United States, 10 Cir., 1957, 245 F.2d 135, which cites Grand Prairie, dealt with intangible personal property. The situs of this type of property is, for most purposes, regarded as being at the domicile of the owner. First National Bank v. Maine, supra; Vogel v. New York Life Insurance Co., 5 Cir., 1932, 55 F.2d 205, certiorari denied 287 U.S. 604, 55 S.Ct. 9, 77 L.Ed. 525; 15 C.J.S. Conflict of Laws § 18c, p. 928. It follows that the notice of lien filed in Harrison County, Texas, was not a compliance with the requirement that the notice be filed in the State where the property here involved was situated.

■ Having decided that the Texas filing of a notice of lien was ineffective to give it any validity against mortgagees or purchasers, we do not consider whether the recording of the Bagley mortgage in Caddo Parish gave it priority, since the mortgage was recorded in Winn Parish, and the bill of sale was also there recorded, before the Government's notice of lien was placed of record in that Parish. The District Directors urge that because the Bagley mortgage was given to secure a prior indebtedness, and the bill of sale was executed in satisfaction of the mortgage indebtedness, Mrs. Bagley was not a purchaser or mortgagee within the meaning of, or entitled to the protection of Section 6323. Whether a claimant has a valid mortgage or has ac-

quired a valid title by purchase are questions to be determined by the law of the state. United States v. Winnett, 9 Cir., 1947, 165 F.2d 149. Under the law of Louisiana, a pre-existing debt is sufficient consideration for the execution of a mortgage and a mortgage given to secure an antecedent debt is valid. So too, the transfer of mortgaged property by the owner as payment of the mortgage indebtedness is a valid consideration. These propositions are established by the Supreme Court of Louisiana in Provost v. Harrison, 205 La. 21, 16 So.2d 892. The Government suggested that the transactions between C. H. Bagley and his mother were not bona fide. The district court held otherwise and its finding is sustained by the record.

■■ The contention is made by the appellants that the district court did not have jurisdiction to grant the relief sought and that, since neither of the defendants had an official residence in the judicial district, they were improperly sued in that district. The district court properly resolved these issues against the appellants. As to the first proposition, this Court has recently said:

> "There is no longer any doubt but that where a District Director of Internal Revenue has levied upon property belonging to one person in order to satisfy the tax liability of another, the true owner may obtain from the United States district court an injunction against the District Director to prevent the sale of such property, and that, as the owner is not the taxpayer involved, such relief is not prohibited by 26 U.S.C.A. § 7421." Maule Industries, Inc. v. Tomlinson, 5 Cir., 1957, 244 F.2d 897, 899.

Cited in support of this principle were Tomlinson v. Smith, 7 Cir., 1942, 128 F.2d 808; Raffaele v. Granger, 3 Cir., 1952, 196 F.2d 620; and Holland v. Nix, 5 Cir., 1954, 214 F.2d 317. As to the second point, the venue for such a suit

---

2. Pullman's Car Co. v. Pennsylvania, supra.

3. Id.

4. First National Bank v. Maine, supra.

is properly laid in the district court serving the geographical area wherein the property is situated. Seattle Association of Credit Men v. United States, 9 Cir., 1957, 240 F.2d 906; Raffaele v. Granger, supra. The property which was the subject matter of the controversy was situated in Winn Parish in the Western District of Louisiana where the suit was brought.

We find no error in the proceedings in the district court. Its judgment is

Affirmed.