EDNA D. FREEMAN, Plaintiff and Petitioner, *v.* JOSÉ RAMÓN NOGUERA, SECRETARY OF THE TREASURY, Defendant and Respondent.

No. 135. Resubmitted February 6, 1961.—Decided March 24, 1961.

*Brown, Newsom & Córdova* for petitioner. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Luis F. Candal, Assistant Attorney General,* for respondent.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

George D. Freeman, a citizen and resident of the state of Michigan, was the owner of 1360 common shares, Class A, of the corporation Frederick Lee, Inc., a corporation organized and doing business under the laws of the Commonwealth of Puerto Rico, with its principal office at Mayagüez.

At his death on March 29, 1953, these shares were transferred to his widow Edna D. Freeman, domiciled in and a resident of the city of Sturgis, Michigan, and a citizen of that state. The entire inheritance estate—among which were the aforesaid shares—was *physically* located outside of Puerto Rico. The petitioner timely filed the corresponding returns with the Government of the United States and with the Government of the State of Michigan, for the liquidation of the tax by reason of the transfer of the inheritance estate, and paid the sums of $12,567.06 and $5,840.82.

On October 11, 1957 the Secretary of the Treasury requested the petitioner to pay a certain amount of money for tax and penalty pursuant to Act No. 303 of April 12, 1946 (Sess. Laws, p. 782, 13 L.P.R.A. § § 881 *et seq.*), generally known as the Inheritance Tax Act, in connection with the transfer of the shares of the local corporation. After an administrative hearing was held in which the market value of the shares at the time of the death of the predecessor was determined in the amount of $112,200 and the corresponding credits were granted for the taxes paid to the United States and Michigan governments, petitioner was requested to pay tax in the amount of $22,432.66 and a penalty in the amount of $1,121.63 for failure to have timely filed the notification required by § 5 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790, 13 L.P.R.A. § 893). Feeling aggrieved by this administrative order, the petitioner appealed to the Superior Court, San Juan Part, which dismissed the complaint. To review this judgment petitioner appealed to us and we issued the writ.

The major question before us is whether pursuant to the language of Act No. 303 of April 12, 1946, the Secretary of the Treasury is authorized to levy a tax on the transfer by inheritance of shares of a domestic corporation, with its principal office in Puerto Rico, where the deceased as well as the heiress are domiciliaries, residents and citizens of a

state of the Union and the stock certificates are at the time of the death physically within said state. To that effect petitioner maintains that the Act makes no *specific reference* to "nonresidents" nor to "intangible property" nor does it contain any provision "giving any indication that the lawmaker intended to extend this tax to intangible property belonging to nonresidents which were not physically located in Puerto Rico." [1]

■■■■ It was with the change of sovereignty that the tax upon property transferred by inheritance made its first appearance in the local tax structure. The first provisions on this matter were adopted on January 31, 1901 (1902 Revised Statutes, p. 455, §§ 368–381), levying a tax on the transfer, either by will or intestacy, or by inheritance or gift intended to grant the possession or the usufruct after the *death* of (*a*) real property having its situs within Puerto Rico, belonging or not to inhabitants of the Island; and (*b*) personal property belonging to inhabitants of Puerto Rico. It was a typical inheritance tax which fell directly upon the property and whose only taxable event was the death of the transferor of the property. This inheritance tax was modified and enlarged in 1925 and by virtue of Act No. 99 of August 29, (Sess. Laws, p. 790) a tax was levied upon every transfer made, by reason of death, of (*a*) real property in Puerto Rico belonging to residents or nonresidents of Puerto Rico; (*b*) personal property in Puerto Rico *or outside of Puerto Rico belonging* to residents in Puerto Rico, and (*c*) *personal property in Puerto Rico belonging to nonresidents*. The principal modification

---

[1] In the complaint filed by petitioner she challenged the authority of the Secretary to make the tax assessment on the ground that it violated certain provisions of the United States and Commonwealth constitutions. Subsequently, in the memorandum presented in the respondent court she desisted of this objection and expressly accepted that our Legislative Assembly may levy a tax on the transfer of intangible property belonging to nonresidents. The question was limited to whether our statute on this matter covers this situation.

introduced by this Act is the assessment of a tax upon personal property belonging to nonresidents having its situs within Puerto Rico and on personal property belonging to residents of Puerto Rico, even if said property were physically located outside the jurisdiction. In other words, the tax assessed to the nonresidents depended exclusively on whether they had personal or real property located or with situs within Puerto Rico. The tax kept in essence its condition of being an inheritance tax. By virtue of Act No. 303 of April 12, 1946, *supra*, the tax upon property transferred by inheritance is substantially altered and a new system is adopted which is essentially a tax on the *transfer* of property. To that effect the scope of the assessment is enlarged and it practically includes every kind of transfer, whether inter vivos or mortis causa.[2] The tax is no longer a tax upon the property or persons, and specifically upon the inheritance estate, but rather one which considers as the incidence of tax the transfer or transmission of property, that is, the tax is laid *upon the power to transfer the property* or upon *the right to inherit*. In this sense the traditional concept of property tax is abandoned and instead a new approach is adopted of the tax on the *privilege* of

---

[2] The Act establishes as taxable event the occurrence of a "gift" but it defines this term (§ 1) as including not only the classical situation regulated by the Civil Code (§ § 558 to 598, 31 L.P.R.A. § § 1981 to 2053), but also a number of transfers, such as the *transfer* of a property for less than its fair value, the remission in whole or in part of a debt, the amount of a life insurance policy under certain conditions, *transfers* in trust (*Belaval* v. *Court of Eminent Domain*, 71 P.R.R. 246 (1950); *Álvarez* v. *Secretary of the Treasury*, 80 P.R.R. 15 (1957) and "all *transfers* effected by inheritance" by will or intestacy. By virtue of an amendment introduced by Act No. 103 of April 25, 1950 (Sess. Laws, p. 262), in the definition of "gift" there was also included the life annuity and the creation of usufruct reserved, where the parties are in the third degree of consanguinity or second of affinity. (The practical effect of this amendment was to set aside our ruling in *Blanco* v. *Registrar*, 70 P.R.R. 557 (1949).) Likewise, § 10 (13 L.P.R.A. § 891) establishes a presumption of "gift" in connection with the *transfers* made by a person over 50 years of age, or within the two years preceding the death of the transfer, to his children, descendants and other relatives.

transferring property. *People* v. *Fester*, 356 P.2d 130 (1960) ; *In re Clark's Estate*, 354 P.2d 112 (1960) ; *In re Birkeland's Estate*, 353 P.2d 667 (1960) ; *In re Ryan's Estate*, 102 N.W.2d 9 (N.D. 1960) ; *In re Hoffmann's Estate*, 160 A.2d 237 (Pa. 1960) ; *In re Hayman's Estate*, 98 S.E.2d 273 (W.Va. 1957) ; *Department of Taxation* v. *Weber*, 113 N.E.2d 141 (Ohio 1953) ; *Thompson* v. *Calvert*, 301 S.W.2d 496 (Tex. 1957) ; *Kirkwood* v. *Bank of America*, 273 P.2d 532 (Cal. 1954) ; *State of California* v. *St. Louis Union Trust Co.*, 260 S.W.2d 821, 826 (Mo. 1953), cert. issued 348 U.S. 808 and quashed 348 U. S. 932.

The foregoing leads us to the inescapable conclusion that for the purposes of the tax assessment it is only necessary that there exist a transfer of property or rights in Puerto Rico. Any reference in the law to the nature of the property—tangible or intangible—or to the condition of resident of the parties, is clearly unnecessary, for as we have said, it is enough for a transfer, as contemplated by the law, to take place inasmuch as in that case it is not a tax upon the property or the persons but rather on the privilege of *transferring* or *receiving*.[3]

▆▆▆ However, if the classification of tangibles or intangibles should be necessary, we believe that the statute covers them sufficiently. The Act in force retained several provisions contained in the former Act (Act No. 99 of August 29, 1925) and among them § 14 (13 L.P.R.A. § 882), which provides, among other things, that the word "property" shall be construed to include both real or *personal*

---

[3] The legislative history of House Bill No. 837, which later became Act No. 303 of 1946, *supra*, sheds no light whatsoever on the problem before us. The House of Representatives considered the bill after it had been discharged by the Finance Committee and, therefore, we do not have the benefit of any report (Minutes of the House of Representatives, 1946, p. 1561). The amendments introduced by both the House (Minutes, 1946, pp. 1640 to 1647) and by the Senate (Minutes of the Senate, 1946, pp. 1298 to 1304) have no relation whatsoever with the nature of the property or the status of resident for the purpose of the tax assessment.

estate and any form of interest therein. Any deficiency in the definitions is supplied by the provisions of the Civil Code, § 12 of the Civil Code (31 L.P.R.A. § 12); *Wood* v. *Tax Court; Descartes, Treas., Int.,* 71 P.R.R. 216 (1950). Pursuant to § 259 of the Civil Code (31 L.P.R.A. § 1028) incorporeal things, consisting only in a right, shall be considered movables or immovables, according to the object to which they apply or on which they fall. And *"shares or interests in banks or companies of commerce, industries, or any other speculation . . ."* shall be considered movables by disposition of the law. (Section 268 of the Civil Code, 31 L.P.R.A. § 1064). Although actually unnecessary for the purpose of deciding this suit, we shall add that, notwithstanding the admissions in the pleadings,[4] the transfer of shares effected in this case is taxable because it represents capital invested in Puerto Rico. *Curry* v. *McCanless,* 307 U.S. 357 (1939); Annot., 76 A.L.R. 806; 79 A.L.R. 344; 104 A.L.R. 805. *Cf. González* v. *Secretary of the Treasury,* 75 P.R.R. 864, 869–873 (1954). Under these circumstances the application of the tax in connection with the transfer seems obvious. The fact that the stock certificates are physically situated outside of Puerto Rico does not operate to impair the exercise of the local power to levy a tax, for as stated in *Graves* v. *Schmidlapp,* 315 U.S. 657, 660 (1941), "intangibles . . . are legal relationships between persons and . . . in fact have no geographical location. . . ."

We admit that the Act does not make any *express mention* that the tax shall be levied on nonresidents. It defines

---

[4] The Secretary of the Treasury admitted all the facts contained in the complaint and among them, that "all the property belonging to the deceased George D. Freeman, and which passed by inheritance to the plaintiff, was physically located in Sturgis, Michigan, United States of America, and *there were no personal or real property in or within* Puerto Rico at the time of the death of said predecessor." (*Cf. Cooperativa Cafeteros de Puerto Rico* v. *Government of the Capital, ante,* p. 49, decided February 9, 1961; *Coll* v. *Sec. of the Treas, ante.* pp. 26, 36.

"recipient" as the person receiving a gift, as defined in the Act; and "donor" as the person who makes, who has the power to make or to withhold the gift, or to change the recipient thereof, and includes the deceased in the event that the property is *transferred* by inheritance (§ 1.) The tax is assessed to the recipient for each taxable gift (§ 2.) Notwithstanding the lack of the express mention of nonresidents which, we repeat, was unnecessary, an examination of the entire Act taken as a whole reveals that the intention of the legislature was to include them among the persons compelled to pay the tax. Section 8(*a*) (13 L.P.R.A. § 889) establishes the manner for the payment of the tax in the case of gifts to nonresidents, and provides that the resident donor intending to make a gift to a nonresident shall inform the Secretary of the Treasury not less than thirty days in advance of the intended *transfer;* that the Secretary of the Treasury shall compute the tax to be paid, and shall inform the donor, who shall withhold the tax from the recipient; and that if the donor fails to comply with this obligation to withhold the money, he shall be personally liable for the payment of said tax. In granting credit for taxes paid to other governments by reason of the same transfer, § 5(*a*) (13 L.P.R.A. § 887) provides for cases where the tax credited has been levied by reason of the donor *or the recipient* having a "taxable status" in another jurisdiction.[5]

██ On the other hand, we must presume that when

---

[5] The pertinent part of this section reads as follows:

"There shall be allowed as a credit against the tax imposed by section 2 the amount of any succession, inheritance, or transfer tax imposed by the Government of the United States of America or any other foreign government . . . *Provided, further,* That if such a tax is imposed by reason of the donor having a taxable status within the jurisdiction, said credit shall be allowed only if such jurisdiction does not tax transfers made by residents of Puerto Rico or grants a corresponding tax credit in such cases; *And provided, further,* That if the tax is imposed by reasons of the recipient having a taxable status within such jurisdiction, said credit shall be allowed only if such jurisdiction does not tax transfers made to residents of Puerto Rico or grants a corresponding tax credit in such case."

the Legislative Assembly enacted Act No. 303 it was aware that for the purposes of levying a tax such as the one under consideration, the distinction between residents and non-residents and tangibles and intangibles was of no significance from the constitutional point of view. Since April 1942 the United States Supreme Court had rejected in *State Tax Comm'n* v. *Aldrich*, 316 U.S. 174 (1941), the rule of immunity from double taxation which had been sanctioned in *First National Bank* v. *Maine*, 284 U.S. 312 (1931) and *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U.S. 204 (1929). The rule on double taxation has suffered several alterations: (*a*) in *Blackstone* v. *Miller*, 188 U.S. 189 (1902), the court upheld the power of New York to tax the transfer of debts owed by a citizen of said state to a person domiciled in Illinois, although the state of Illinois had taxed the entire hereditary estate. Mr. Justice Holmes stated that the transfer "necessarily depends upon and involves the law of New York for its exercise"; (*b*) in *First National Bank* v. *Maine, supra*, a divided court held that double taxation could not be levied by the state of residence of the transferor and the state where the transfer took place; and (*c*) in the *Aldrich* case, where the *First National Bank* case was expressly overruled, the power of more than one state to tax the transfer of intangibles was upheld, reaffirming the principle that the tax power depends upon whether the state affords any protection or benefit in connection with the intangibles the transfer of which is sought, or at least, that the transfer depends upon or involves the law of said state. It specifically considered: (1) the fact that the corporation had been organized in the state of Utah; (2) its existence was regulated by the law of Utah, and (3) the transfer of the shares in the books of the corporation should be made consistent with the law of said state.

The local case law on the subject matter is meager and has not expressly considered the point involved in the present

suit. In *McCormick* v. *Domenech*, 44 P.R.R. 621 (1933), this Court upheld the action of the then Treasurer of Puerto Rico in including, among the property of the estate of a resident for the liquidation of the inheritance tax, certain deposits of money, bonds certificates, and shares which were deposited in banks outside of Puerto Rico. It expressly applied the doctrine of *Farmers Loan Co.* v. *Minnesota, supra,* to the effect that the maxim *mobilia sequuntur personam* was applicable to intangibles which, for the purposes of the inheritance tax, had their situs in the domicile of the owner. And in *Piacentini* v. *Buscaglia,* 59 P.R.R. 764 (1942), we held that intangible personal property—deposits in banks, bonds and shares, special partners' capital in a local commercial partnership, and the balance of an open account in said partnership—belonging to a testatrix resident in France was subject to inheritance tax consistent with our laws. In the opinion of said case, decided January 23, 1942, when the Supreme Court of the United States had not yet decided the case of *State Tax Comm'n* v. *Aldrich, supra,* we held that "We have no doubt that, if the testatrix in the case at bar had died while domiciled within a State or Territory of the United States, the Government of Puerto Rico could not, in accordance with the decision in *Farmers Loan & Trust Co., supra,* levy an inheritance tax upon bonds or intangible property actually located in Puerto Rico." (P. 773.) We meaningly said, in deciding a motion for reconsideration in said case, that "All these investments of money made in Puerto Rico, at rates of interest higher than those usually paid in other countries, enjoy the protection of our government and of our laws. It seems fair that on being transmitted as hereditary property they should contribute, in a like measure as other investments of residents in this country, to the defrayal of the government's expenditures." [6]

---

[6] The shares involved in the present case belong, as we have said, to a corporation organized and doing business under the laws of Puerto

There is no doubt that the transfer of the shares in favor of the petitioner by reason of her husband's death, shall be effected in accordance with the local law on private corporations. This is a corporation organized under our laws with its principal office in Mayagüez. And we must presume that record of the transfer of shares shall be done here, consistent with the provisions of the former Act of 1911.[7] This fact alone that the transfer be made under the provisions of our law justifies the power of our Legislative Assembly to levy the tax. This is one of the benefits that Puerto Rico grants and for which, as stated by Mr. Justice Douglas in the majority opinion of the *Aldrich* case at p. 180, "it can ask return." As stated in *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444, the constitutional test for determining whether the property has been taken without the due process of law is "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return." (P. 444.) It seems clear that we are concerned with a transfer covered by the statu-

---

Rico. This corporation is also one of the usufructuaries of the benefits of the Industrial Tax Exemption Act of 1948 (Act No. 184 of May 13, 1948—Sess. Laws, p. 482, 13 L.P.R.A. § § 221 *et seq.*).

[7] The shares under consideration for the purpose of the tax assessment were issued prior to the year 1953. Therefore, the provisions of the Corporation Act of 1911 are applicable with reference to their transfer. (See § 620 of Act No. 3 of January 9, 1956 (Sp. Sess. Laws, p. 197, 14 L.P.R.A. § 1620), that is § 20 of Act No. 30 of March 9, 1911 (Sess. Laws, p. 87, 14 L.P.R.A. § 151, as amended by Act No. 94 of May 12, 1943 (Sess. Laws, p. 230), which insofar as pertinent provides:

"Every corporation organized under this subtitle shall keep *at its principal office in the Commonwealth of Puerto Rico transfer books, in which the transfer of shares of stock shall be registered,* and stock books, which shall contain the names and addresses of the stockholders and the number of shares held by them, which shall at all times during the usual hours of business be opened to the examination of any stockholder; *Provided,* That *the secretary of the corporation shall be bound to transmit monthly to the Secretary of the Treasury of Puerto Rico a duly certified statement showing the transfers of shares of stock made during the month, as it appears from the transfer book;* . . . ." (Italics ours.)

tory definition of "gift" and in addition that the local laws have offered benefits and protection to the transferor and to the recipient of the shares.

■■ The petitioner also challenges the action of the Secretary of the Treasury in assessing a penalty equal to five per cent of the tax for failure to file in time the notification of death required by law. The pertinent section [8] provides that it shall be the duty of every "administrator" acting in Puerto Rico or every "ancillary administrator, agent, or person lawfully authorized to administer the estate or any portion thereof in Puerto Rico," to transmit to the Secretary, within the sixty days following the death, a notification containing certain information on the death and other circumstances. It also provides that if said notification is not presented within the term and in the manner therein established there shall be added to the tax by way of penalty an amount equal to two (2) per cent of the amount due for each period of thirty (30) days or fraction of such period that the lack of notification exists; but said penalty shall in no case exceed five (5) per cent of the amount due. The word "administrator" embraces any heir who is in charge of the disposition and distribution of the estate of the decedent.[9]

Construing these two provisions together we said in *Del Toro* v. *Tax Court*, 65 P.R.R. 58, 63 (1945) that "the conclusion is unavoidable that it is not enough that a person be an heir or relative of a decedent in order that such person be charged with the obligation which the law imposes on the administrator, executor, or trustee, to transmit to the Treasurer of Puerto Rico a sworn notification of the death of the decedent. For such an obligation to fall upon an heir, relative, or beneficiary it is an indispensable requisite that he or she should have charge of the *disposition* and

---

[8] Section 5 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790, 13 L.P.R.A. § 893).

[9] Section 14 of Act No. 99 of 1925, *supra*. (13 L.P.R.A. § 882.)

apportionment of the property of the decedent or be the person legally authorized to administer said property." And we added that "the petitioning heirs, at the time of the filing of the first notification, were not in possession of the estate."

It appears from the facts alleged in the complaint, which were accepted in the answer, that the petitioner was the sole and universal heir of the property left by her husband at his death. We must presume, in the absence of evidence to the contrary, that as such heiress she was in charge of the disposition of the testator's property and was in possession thereof. Under these circumstances the contention that she was not bound to present the notification required by law is untenable. Nor do there exist in this case the circumstances which we considered sufficient in a similar case to relieve the taxpayer from the payment of the penalty. *P. R. Telephone Co.* v. *Secretary of the Treasury,* 79 P.R.R. 845, 883 (1957). Even if petitioner had believed that she was not bound to pay the tax on the premise of her own personal interpretation of the inapplicability of the law to her case, there was nothing to prevent her from presenting the notification with the corresponding reservation that her action did not imply an acceptance of legal liability of payment. In any event, our laws gave her the opportunity to litigate the validity of any assessment made by the Treasurer and to allege that she did not owe any sum whatsoever. Section 2-A (4) of Act No. 235 of May 10, 1949 (Sess. Laws, p. 732); *Balbás* v. *Tax Court,* 73 P.R.R. 235 (1952).

For the reasons stated the judgment rendered by the Superior Court, San Juan Part, (Hon. A. Fiol Negrón, Judge), is affirmed.